William S. SPEED et al.

v.

TRANSAMERICA CORPORATION.

Appeal of William S. SPEED et al.

Appeal of TRANSAMERICA CORP. (three cases).

Jack FRIEDMAN et al.

v.

TRANSAMERICA CORP.

Appeal of FRIEDMAN ASSOCI-ATES et al.

Appeal of Estelle FRIEDMAN, Administratrix of Estate of Jack Friedman, deceased.

Philip ZAHN, Suing individually and on behalf of all similarly situated holders of Class A Common Stock of The Axton-Fisher Tobacco Company

v.

TRANSAMERICA CORPORATION.

Appeal of Philip ZAHN.

Nos. 11836, 11839, 11834, 11835, 11838, 11837, 11840.

United States Court of Appeals Third Circuit.

Argued May 29, 1956.

Decided Aug. 14, 1956.

See also, D.C., 18 F.R.D. 492.

Edwin D. Steel, Jr., Wilmington, Del., Gerhard A. Gesell, Washington, D. C. (William S. Megonigal, Jr., Wilmington, Del., Paul C. Warnke, Washington, D. C., Morris, Steel, Nichols & Arsht, Wilmington, Del., Covington & Burling, Washington, D. C., on the brief), for Transamerica Corp.

Daniel O. Hastings, Wilmington, Del. (Hastings, Lynch & Taylor, Wilmington, Del., Frank & Gonnet, Claude L. Gonnet, New York City, Weinstein & Levinson, New York City, Arthur Frank, New York City, Clarence W. Taylor, Wilmington, Del., on the brief), for plaintiffs-appellees Speed et al. and Friedman et al.

Frank Weinstein, New York City (Samuel J. Levinson, New York City, Samuel Handloff, Wilmington, Del., William H. Foulk, Herbert L. Corbin, Wilmington, Del., on the brief), amici curiae.

Thomas G. Meeker, General Counsel, Washington, D. C. (Alexander Cohen, Sp. Counsel, Securities and Exchange Commission, Washington, D. C. on the brief), for Securities and Exchange Commission.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

These consolidated appeals involve three class actions brought in the District Court for the District of Delaware by former and present stockholders of Axton-Fisher Tobacco Company, a Kentucky corporation which manufactured tobacco products, against its majority stockholder, Transamerica Corporation, a holding and investment company incorporated in the state of Delaware. The stockholders charged that Transamerica had fraudulently deprived them of their rightful participation in the liquidation of Axton-Fisher in 1944.

Prior to April 30, 1943, Axton-Fisher had outstanding three classes of stock, designated as Preferred and Class A and Class B common. The Preferred stock, which had a par value of $100 per share, was entitled to preferential cumulative dividends of $6 per share annually, was redeemable at $105 per share plus accrued dividends and was entitled to this same amount on liquidation, before participation of any other class of stock. The Class A common stock had a par value of $10 per share and was entitled to cumulative dividends of $3.20 per share after payment of dividends on the Preferred stock but before dividends on

the Class B stock and was entitled further, after the Class B stock had received $1.60 per share in any year, to participate as a class equally with the Class B stock in the distribution of any additional dividends. The Class A stock was redeemable on 60 days' notice at $60 per share plus accrued dividends, and was convertible into Class B stock, share for share, at the option of the holder at any time prior to the date set for redemption. In the event of the dissolution, liquidation, merger or consolidation of Axton-Fisher, or the sale of substantially all of its assets, and after the payment on each share of Preferred stock of $105 plus any unpaid dividends, the Class A stock was entitled to receive all unpaid accrued dividends and thereafter, for each share, twice the amount paid upon each share of the Class B stock. The Class B common stock also had a par value of $10.00 per share and had the sole voting rights except when four quarterly dividends were in default on the other classes of stock. As of December 31, 1941 due to default in dividends since 1937 all the classes of stock had voting rights and there were outstanding 14,136 shares of Preferred stock, 45,-465 shares of Class A stock, and 112,012 shares of Class B stock.

In 1944 William S. Speed brought suit on behalf of Class A and Class B stockholders of Axton-Fisher who had sold their stock to Transamerica pursuant to a public offer made by Transamerica by letter dated November 12, 1942,[1] at $40 and $12 per share, respectively. They alleged that by reason of the greatly increased value of the leaf tobacco inventory carried by Axton-Fisher the stock was actually worth many times the amount for which they were deceived into selling it to Transamerica and they sought the difference between the sale price and the alleged true value. The first count of the complaint was based on a common law action of fraud and deceit. The other counts charged that in acquiring the stock of public holders Transamerica did not make disclosure of facts materially affecting the value of such stock which were known to it as an insider and hence violated § 10(b) of the Securities Exchange Act of 1934, 15 U. S.C.A. § 78j(b), and Rule X-10B-5 promulgated by the Securities and Exchange Commission.[2] About the same time in 1944 Jack Friedman and Philip Zahn brought actions on behalf of themselves and all other holders of Axton-Fisher Class A common stock whose stock had been called on April 30, 1943 by the board of directors of Axton-Fisher at Transamerica's instigation for redemption on July 1, 1943 at $60 per share plus accrued dividends of $20.80, amounting to a total of $80.80 a share. They alleged that Transamerica had planned to capture exclusively for itself, upon the sale, liquidation or merger of Axton-Fisher, the profit resulting from the increased value of its large inventory of leaf tobacco and they sought the right to participate in the liquidation of Axton-Fisher, which had occurred in May, 1944.

The matter of Transamerica's controlling ownership has been the subject of much litigation in the district court and this court[3] and in the state courts of Kentucky.[4] It would serve no useful purpose to review the various phases of the litigation preceding the trial of the Speed, Friedman and Zahn cases which

1. The text of the letter is set forth in Speed v. Transamerica Corp., D.C.1951, 99 F.Supp. 808, 813, footnote 3.

2. 17 CFR Cum.Supp. § 240.10b-5. The pertinent provisions of this Rule are set out in the opinion of the district court, 99 F.Supp. 808, 812-813.

3. Geller v. Transamerica Corporation, D.C. 1943, 53 F.Supp. 625, affirmed D.C.1945, 151 F.2d 534; Ibid, D.C.1945, 63 F.Supp.

248; Zahn v. Transamerica Corporation, D.C.1945, 63 F.Supp. 243, reversed 3 Cir., 1947, 162 F.2d 36, 172 A.L.R. 495; Friedman v. Transamerica Corporation, D.C. 1945, 63 F.Supp. 247; Ibid, D.C.1946, 5 F.R.D. 115; Speed v. Transamerica Corporation, D.C.1945, 5 F.R.D. 56; Ibid, D.C.1947, 71 F.Supp. 457.

4. Taylor v. Axton-Fisher Tobacco Co., 1943, 295 Ky. 226, 173 S.W.2d 377, 148 A.L.R. 834.

culminated into the judgments here under review. These cases, having a common subject matter involving the same evidence, were consolidated for trial. In the Speed case the district court found that Transamerica at the time it sent out the letter of November 12, 1942, was secretly planning to capture the increased value of the Axton-Fisher inventory by subsequently merging, dissolving or liquidating Axton-Fisher, and that by failing to disclose the increased value of the tobacco inventory it had failed to comply with the mandate of Rule X–10B–5 of the Securities and Exchange Commission to discolse material facts which would be likely to influence the stockholders. Accordingly the district court concluded that Transamerica was liable in damages to those stockholders who had accepted the offer of November 12, 1942 and had thus sustained damages through the sale of their stock to Transamerica.

In the Zahn and Friedman actions the district court found that Transamerica had exercised its position as controlling stockholder to cause the board of directors of Axton-Fisher to call the Class A stock for redemption and that although Transamerica at that time knew that the board was doing so on the assumption that it was for the purpose of improving the capital structure of the company as a going concern, the real purpose of Transamerica in causing the call to be made was by liquidation, merger, consolidation or sale of Axton-Fisher's assets to gain for itself the appreciation in the value of those assets. Accordingly the district court held Transamerica accountable to the Class A stockholders, both those who had redeemed their stock pursuant to the call and those who had not done so. The amount of damages and the persons for whose benefit the judgments should run were left for determination by a special master. Speed

v. Transamerica Corp., D.C.1951, 99 F. Supp. 808.[5] On October 18, 1951, E. Ennalls Berl, Esquire, was appointed master. He substantially completed his final report on March 31, 1954 but died before signing it. The district court decided independently to determine all the issues relating to Transamerica's liability for damages, including the personal defenses it had urged before the master. The court found that a disinterested board of directors of Axton-Fisher would undoubtedly have exercised its powers to call the Class A stock before liquidation, disclosing the intention to liquidate together with full information as to the appreciated value of Axton-Fisher's tobacco inventory, and that the Class A stockholders would thereupon have exercised their privilege to convert their stock, share for share, into Class B stock and would thus have participated equally with the Class B stockholders in the proceeds of the liquidation. Applying this rule in the Friedman and Zahn cases, after deducting the sum of $80.80 per share received by the Class A stockholders or set aside for them on the redemption call of April 30, 1943, the court found those stockholders entitled to $21.02 per share. In the Speed case the court applied the same formula which it had fixed as the measure of damages for the Friedman and Zahn Class A stockholders and in respect to the Class B stockholders the court found Transamerica liable for the difference between the sale price and the gain made on liquidation. Accordingly the court found the Speed Class A stockholders entitled to $61.82 per share and the Speed Class B stockholders to $89.82 per share. Interest at the rate of 2% per annum was allowed in each case from May 31, 1944 to the date of entry of judgment, with interest thereafter at the rate of 6% per annum. Judgments were entered in favor of the stockholders in the three cas-

5. Subsequently argument was had on the proposed decrees for judgments, Speed v. Transamerica, D.C.1951, 100 F.Supp. 461. Transamerica filed a motion seeking to reopen the case to take new evidence which was denied, Ibid, D.C.1951, 100 F.Supp.

463. Transamerica then filed a motion for leave to file an answer to count 1 of the Speed complaint which was denied, Ibid, D.C.1952, 103 F.Supp. 47. These questions are not involved in the present appeals.

es. Speed v. Transamerica Corporation, D.C.1955, 135 F.Supp. 176. All the parties have appealed. Transamerica appeals from the judgments, categorically denying any liability. The Class A stockholders appeal from the judgments insofar as the liquidation proceeds were to be shared equally with the Class B stockholders. Those Class A stockholders who still hold unredeemed stock appeal from the judgments insofar as they did not allow interest against Transamerica on the redemption price of $80.-80. All the stockholders appeal from the judgments insofar as they award them interest at 2% per annum only.

As we have indicated, the district court concluded that Transamerica was liable both in tort for fraud and deceit and because of its violation of Rule X–10B–5 of the Securities and Exchange Commission. These conclusions were based upon its finding of Transamerica's deceptive concealment of the great appreciation in value of Axton-Fisher's tobacco inventory and of its secret intention to capture that appreciation for itself to the exclusion of the public stockholders. In this court Transamerica does not seriously argue that the legal conclusions drawn by the district court do not follow if the factual premise is accepted. But it does argue most strenuously that the evidence and the inferences properly to be drawn therefrom do not support the factual finding and that the finding should accordingly be set aside as erroneous.

█ This finding by the district court was based largely on inferences drawn from the testimony of Carl B. Robbins, former president of Axton-Fisher, which were in direct conflict with the testimony of L. M. Giannini, a director of Transamerica who supervised its relations with Axton-Fisher. The parties have discussed at great length the credibility of these and other witnesses and the inferences properly to be drawn from their testimony. But their credibility was a matter to be resolved by the trial judge, not by us.

And it was within his province to draw the appropriate inferences. After examining the record we cannot say that the trial judge's actions in resolving these and the other factual issues in the cases were erroneous. The evidence is discussed in considerable detail by Chief Judge Leahy in his opinion determining liability. D.C., 99 F.Supp. 808, 816–827, 833–842. We need not repeat that discussion here. Suffice it to say that it furnishes adequate support for his findings of fact which in turn support his conclusion that Transamerica is liable to the plaintiffs in the three cases in damages.

█ We turn then to the appeals by the plaintiffs in the three cases which raise questions with respect to the district court's assessment of damages and award of interest. The first and principal question is the one raised by the holders of Class A stock as to the amount of damages to be awarded to them. The Class A stockholders contend that they are entitled to receive their aliquot shares in the liquidation distribution in the two-to-one ratio provided for in the charter for Class A stockholders participating in a liquidation. The district court held, however, that they are entitled only to recover as though they were Class B stockholders for the reason that a disinterested board of directors having knowledge of all the facts could and would have called the Class A stock for redemption in which event all of the Class A stockholders would have exercised their option to convert their shares into Class B stock on a one-for-one basis. We think that the district court was right in so holding.

█ The Court of Appeals of Kentucky has held that the Axton-Fisher Class A stock, although designated as a common stock was in the nature of a junior preferred stock, and that the provision of the charter for the redemption of the Class A stock was a continuing option allowed to the holders of the Class B common stock which the board of di-

rectors could exercise in their favor.[6] This construction of the Axton-Fisher charter by the highest court of the state of its incorporation was, of course, binding on the district court. We agree with the district court that the provisions of the Axton-Fisher charter with respect to liquidation must be read realistically with the provisions for redemption of the Class A stock and its conversion into Class B stock. When so read it becomes apparent that a disinterested board of directors discharging its responsibility to the Class B stockholders in case of liquidation would call the Class A stock for redemption at $60 per share if it appeared that the distribution in liquidation to that stock would exceed that figure on a two-to-one basis. Since the board would have the right to do this and the Class B stockholders would be entitled to such action, the failure to do so would be an arbitrary act which would confer a windfall to which they were not entitled under the charter upon the Class A stockholders at the direct expense of the holders of the Class B stock. The district court was therefore quite right in determining that the damages to be awarded to the Class A stockholders should be measured by what they would have received if they had converted their shares into Class B stock prior to the liquidation. The subject was very fully discussed by Chief Judge Leahy in his opinion upon the question of damages. D.C., 135 F.Supp. 176, 180–185. Finding ourselves in accord with what is there said we need only add that our prior decision in the Zahn case [7] does not stand in the way since this particular question was not then in focus.

■■■■ All the plaintiffs contend that the district court erred in reducing the rate of interest to be allowed as a part of the recovery prior to judgment to 2% per annum. The district court determined that under all the circumstances 4% per annum was a fair rate of interest to be allowed for this purpose. This was a matter peculiarly within the discretion of the court and we find no reason to interfere with it. But the court went further and concluded that because of the long delay in prosecuting these cases to final judgment, for which the plaintiffs were in part responsible, the interest prior to judgment awarded to the plaintiffs should be cut in half to 2% per annum. Here we think the district court erred. For however it was caused the delay harmed only the plaintiffs. Transamerica, on the other hand, was benefited. For it was able to retain for its own use until now the funds which it derived from the Axton-Fisher liquidation and on the assets employed in its own business during the period in question the evidence indicates that it received a return very much in excess of 4% per annum. We conclude, therefore, that the full rate of 4% per annum fixed by the district court should have been allowed to the plaintiffs. We are satisfied, however, that the district court did not err in declining to direct that the interest be compounded.

■■■■ Those plaintiffs who hold unredeemed Class A stock contend that they should receive interest from Transamerica on the redemption price of $80.80 which was tendered and made available to them by Axton-Fisher on July 1, 1943 but which they did not accept. We see no merit in this connection. This money was made available to these stockholders and since their claims against Transamerica would not have been prejudiced if they had accepted it, any loss resulting from their delay in taking it cannot be charged to Transamerica.

The judgments of the district court will be modified by increasing the rate of interest allowed prior to judgment from 2% to 4% per annum. As so modified the judgments will be affirmed. The plaintiffs will recover their costs on all the appeals.

6. Taylor v. Axton-Fisher Tobacco Co., 1943, 295 Ky. 226, 229–231, 173 S.W.2d 377, 379–380, 148 A.L.R. 834, 837–838.

7. Zahn v. Transamerica Corp., 3 Cir., 1947, 162 F.2d 36, 172 A.L.R. 495.