**MID–JERSEY NATIONAL BANK, a National Banking Association, Appellant in No. 74–1545,**

**v.**

**FIDELITY–MORTGAGE INVESTORS, a Massachusetts business trust, Appellant in No. 74–1544.**

**Nos. 74–1544, 74–1545.**

United States Court of Appeals, Third Circuit.

Argued Feb. 6, 1975.

Decided June 16, 1975.

Richard S. Miller, Williams, Caliri, Miller & Otley, Wayne, N.J., for appellant Mid-Jersey National Bank.

Michael R. Griffinger, Crummy, Del Deo, Dolan & Purcell, Newark, N.J., for appellant Fidelity-Mortgage Investors.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

These appeals confront us with a novel procedural issue regarding the scope of Bankruptcy Rule 11–44 as well as questions pertaining to a summary judgment in favor of a bank, and pre- and post-judgment interest on that judgment.

Before we may consider the merits of the appeal and cross-appeal in this matter, it is necessary first to determine whether under Bankruptcy Rule 11–44 the filing of a Chapter XI petition operates to stay the appeals.

## A.

Plaintiff, Mid-Jersey National Bank (hereinafter Mid-Jersey), is a National Banking Association with its principal office in New Jersey. Defendant, Fidelity-Mortgage Investors (hereinafter FMI), is a Massachusetts real estate investment trust. Beginning in December 1971 Mid-Jersey extended a line of credit to FMI. FMI utilized this line of credit for nearly two years by borrowing money in exchange for a series of 90-day promissory notes.

On November 7, 1973, FMI executed the promissory note which is the subject of the present suit. The note was payable at the offices of Mid-Jersey on February 5, 1974 in the principal amount of $300,000. Since FMI prepaid interest at the rate of 9¾% per annum, on the date the note was signed, the note, itself, stated no rate of interest.

Shortly after the execution of the note, Mid-Jersey learned of FMI's worsening financial condition and of an attempt by FMI's other creditor banks to obtain Mid-Jersey's agreement to a revolving credit plan designed to keep FMI out of bankruptcy. Instead of becoming a party to the revolving credit agreement, Mid-Jersey decided to terminate FMI's line of credit on the expiration date of the November 7, 1973 note. After the failure of FMI to pay the note on the date of maturity, Mid-Jersey made a written demand for payment on February 13, 1974. Mid-Jersey then applied against the principal amount of the note FMI's compensating balances on deposit with the bank, thereby reducing the amount due Mid-Jersey to $240,000.

After unsuccessfully seeking a voluntary payment from FMI, Mid-Jersey brought this action in the Superior Court of New Jersey, Law Division, Hudson County, alleging default on the note and damages in the amount of $240,000. plus interest from February 5, 1974. The action was removed to the United States District Court for the District of New Jersey, based on diversity of citizenship. On April 10, 1974, a motion by Mid-Jersey for summary judgment was granted, and interest was awarded at the rate of six per cent from February 5, 1974 to the date of entry of judgment.

■ An order was entered on April 17, 1974, by the district court staying execution of the judgment pending appeal, providing a supersedeas bond was filed by FMI. Subsequently, FMI moved for, and the district court allowed, a modification of the order permitting FMI to make a deposit in court in lieu of the supersedeas bond. The deposit was made in the form of a Chase Manhattan Bank negotiable certificate of deposit, payable to the Clerk of the District Court for the District of New Jersey. The certificate of deposit is in the amount of $300,000, and provides for interest at the rate of 8¼% per annum. FMI then appealed from the order and judgment in favor of Mid-Jersey, and Mid-Jersey cross-appealed, challenging the rate of pre-judgment and post-judgment interest.[1]

While the appeal and cross-appeal were pending before this Court, FMI on January 29, filed a petition for reorganization under Chapter XI in the United States District Court for the Southern District of New York. Since that date, FMI's affairs have been administered subject to the supervision and jurisdiction of the District Court for the Southern District of New York.[2]

## B.

■ FMI now contends that we may not proceed to adjudicate these appeals by virtue of Bankruptcy Rule 11–44(a), which provides that the filing of a Chapter XI petition,

---

1. Mid-Jersey has also asked this Court to award additional damages under F.R.App.P. 38. We do not find this appeal to be so devoid of merit as to warrant an award of damages for bringing a frivolous appeal.

2. The Southern District of New York, by an order dated February 6, 1975, has authorized the law firm originally representing FMI in these appeals to continue during these appeals as special counsel for FMI in its capacity as a Chapter XI debtor.

shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property . . ..

FMI contends that Mid-Jersey should be required to file a complaint in the Southern District of New York seeking relief from the stay specified in Rule 11–44. Upon a showing of cause by Mid-Jersey, FMI claims that the Chapter XI court could terminate, annul, modify or condition the stay.

Rule 11–44, which became effective on July 1, 1974, was prescribed by the United States Supreme Court pursuant to 28 U.S.C. § 2075. That statute makes it clear that the bankruptcy and Chapter XI rules are exclusively procedural in nature and "shall not abridge, enlarge, or modify any substantive right . ." conferred by Chapter XI itself. As the Advisory Committee note appended to Rule 11–44 states, "this rule supplements and reinforces the policy of §§ 11a, 311 and 314 of the Act." Thus we must construe the sweeping language of Rule 11–44 to accord with the substantive provisions of Chapter XI.

In this respect § 311 of the Bankruptcy Act, 11 U.S.C. § 711, is crucial to our analysis. Section 311 provides that "the court in which the petition is filed shall . . . have exclusive jurisdiction of the debtor and his property, wherever located." Thus it is apparent that the automatic stay of subsection (a) of Rule 11–44 extends only to proceedings which could divest the debtor of property over which the Chapter XI court has jurisdiction.

Our interpretation of Rule 11–44(a) is consonant with the purpose of the stay— "to prevent interference with, or diminution of, the debtor's property during the pendency of the Chapter XI proceeding." [3] The stay "is intended to prevent a creditor from defeating the jurisdiction of the bankruptcy court over the debtor's property by instituting another action in a different forum." [4] As Judge Learned Hand has said, "stays must be ancillary to the main purpose of the [Chapter XI] proceeding and are not lawful when they cannot contribute to execution of the plan." [5]

The question we must resolve, therefore, is whether the certificate deposited in the district court is the property of the debtor over which the Chapter XI court has exclusive jurisdiction. We hold that, in the context of this case, such a deposit in court is not the property of the debtor and is not subject to the after-arising jurisdiction of the Chapter XI court.

In United States v. Klein, the Supreme Court illuminated the status of property held by a federal court when it held that with respect to jurisdiction over such property, the federal court "is said to acquire exclusive jurisdiction . . . so far as restriction of the power of other courts is necessary for the federal court's appropriate control and disposition of the property." [6]

Although the legal status of a deposit in court pending an appeal is not entirely pellucid, we are of the opinion that such a deposit in custodia legis may be considered the res of a trust. The court acts as trustee and is charged with the duty of determining the beneficiaries pursuant to the appeal.

3. *Teledyne Industries, Inc. v. Eon Corp.,* 373 F.Supp. 191 (S.D.N.Y.1974); *In Re Krull,* 21 F.Supp. 377 (M.D.Pa.1937).

4. *Teledyne Industries, supra,* 373 F.Supp. at 203; *see also In Re* Bargain City, U.S.A., Inc., 212 F.Supp. 111 (E.D.Pa.1962); First National Bank v. Lake, 199 F.2d 524 (4th Cir. 1952).

5. *In Re Commonwealth Bond Corp.,* 77 F.2d 308, 309 (2d Cir. 1935).

6. 303 U.S. 276, 281, 58 S.Ct. 536, 538, 82 L.Ed. 840 (1938). National Automatic Tool Co. v. Goldie, 27 F.Supp. 399 (D.Minn.1939).

This Court has previously considered the status of deposits in court. In *In Re Moneys Deposited*[7], funds representing unclaimed bankruptcy dividends had been deposited in the district court and were later transferred to the Federal Treasury. In an action by Pennsylvania to escheat the sums, we held that "the United States has no beneficial interest [in the deposits] but holds the money as statutory trustee for the rightful owners when and if they are determined by the court." 243 F.2d at 445.

The trust analysis of *In Re Moneys Deposited* was later applied by the Eighth Circuit in *Baxter v. United Forest Products Co., Inc.,*[8] a case involving a plaintiff's deposit in court of installment payments owed to the defendants under a contract of sale. The court held that the plaintiff had no recognizable interest remaining in the funds after the deposit was made, and that the court was holding the moneys in trust for the rightful owners—the defendants.

A trust analogy was also employed by the Second Circuit in *Saper v. West,*[9] an action by a trustee in bankruptcy to recover funds distributed out of a deposit in court by the clerk of a state court after the depositor lost on appeal. The Second Circuit held that the bankrupt had transferred the funds on the date the deposit was made, and that thereafter the bankrupt's only interest in those funds was a contingent one. Once the deposit had been effected, "there was no possible way in which [the bankrupt] could transfer these funds to a third party . . . until or unless that judgment were reversed. Under [applicable state] law no creditor could have obtained a lien on the fund 'in custodia legis.' " 263 F.2d at 427.

*Saper v. West* dealt with a situation quite similar to the one we are faced with in the case at hand. FMI parted with its ownership of the certificate of deposit when the certificate was entrusted to the court. Since then, the only property interest FMI has had in the certificate is a contingent reversionary interest as a potential beneficiary of the trust. Once we have determined that FMI does have an interest in the trust funds, the Chapter XI court would, of course, have jurisdiction over any funds to which the debtor has a rightful claim. At present, however, the Court is able to proceed with determining which party is entitled to receive the trust res and its accumulated interest.

Employment of this analysis preserves the function of the deposit as protection for the party prevailing at the trial level from the possibility of future insolvency of the losing party.[10] At the same time our interpretation does no material damage to the automatic stay provision of Rule 11–44, since the deposit serving as a supersedeas is not available to the reorganization court to aid in the execution of the plan in the Chapter XI proceeding. We hold, therefore, that these appeals are not stayed by Rule 11–44 and we are free to review their merits.[11]

### C.

After carefully considering the affidavits and documentary evidence submitted to the trial court, we have concluded that the court below did not err in granting summary judgment for Mid-Jersey. In spite of FMI's allegations that material facts were in dispute, we are unable to ascertain any fact utilized by the trial court to support its judgment that was controverted by FMI. FMI's principal contention—that it was

7. *In Re Moneys Deposited,* 243 F.2d 443 (3d Cir. 1957).

8. 406 F.2d 1120 (8th Cir.), *cert. denied* 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42 (1969).

9. 263 F.2d 422 (2d Cir.), *cert. denied* 360 U.S. 916, 79 S.Ct. 1433, 3 L.Ed.2d 1532 (1959).

10. *See* In Re Quaker City Cold Storage Co., 45 F.Supp. 570 (E.D.Pa.1942).

11. *See* Phelps v. United States, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975).

not obligated to pay the note when it came due on February 5, 1974—is a legal, not a factual, dispute. Thus the trial court was correct in deciding on summary judgment that Mid-Jersey was entitled to judgment as a matter of law.

### D.

We are unable, however, to affirm the trial court's interest award. As noted above, the district court awarded interest from February 5, 1974, the maturity date of the note, to the entry of judgment, at a rate of 6%. The district court did not designate an interest rate to be awarded on the judgment itself. The post-judgment interest rate would thus be computed, as federal law provides, "at the rate allowed by State law." 28 U.S.C. § 1961.

It is not disputed that the law of New Jersey is controlling regarding the interest, and we turn to that state's laws to determine the question of pre-judgment interest. The New Jersey view is set forth in Rova Farms Resort, Inc. v. Investors Insurance Co., where Chief Justice Hughes wrote:

"At least in the case of a liquidated sum, prejudgment interest has been regarded by our courts as compulsory—to indemnify the plaintiff for the loss of what the monies due him would *presumably* have earned if payment had not been refused. The issue is not whether the plaintiff can prove a loss . . . the loss, rather, is assumed. The basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit

of monies to which the plaintiff is found to have been earlier entitled." [12] (emphasis original).

The comment to New Jersey Court Rule 4:42–11 contemplates the allowance of pre-judgment interest in a proper case as an element of the amount in dispute, as "payment for the use of money."

In the present case, neither the fact of the debt nor its principal amount were in dispute. The only substantial question regarding payment related to the date on which the note became due. Thus, as determined by the district court, pre-judgment interest is allowable under the New Jersey rule.

It would appear that for the rate of pre-judgment interest to be equitable it should reflect the rate fixed by the parties in an arm's length transaction. The parties to this suit voluntarily agreed to a loan at an interest rate, at least with respect to the 90-day note at issue here, of 9¾%. We thus need not speculate about the amount the plaintiff would have obtained if it had had its money available to earn interest. We thus believe that it would be proper to allow the contractual rate of interest to continue in effect until judgment. Equity is not served by permitting a debtor to refuse repayment of a note when it becomes due and then to profit by the delay resulting from ensuing litigation.

A different problem is encountered with regard to the award of post-judgment interest. At the time judgment was entered in the district court, the pertinent New Jersey rule set post-judgment interest at 6% "except as otherwise ordered by the court." [13] The

---

**12.** 65 N.J. 474, 323 A.2d 495, 512 (1974); Busik v. Levine, 63 N.J. 351, 307 A.2d 571 (1973). *See* Thorp v. American Aviation & Gen'l Ins. Co., 212 F.2d 821 (3d Cir. 1954). Even in cases not involving a sum certain, prejudgment interest is more liberally available than previously, by reason of N.J. Court Rule 4:42–11(b).

**13.** New Jersey Court Rule 4:42–11(a) was recently amended. It presently provides that

"Judgments, awards and orders for the payment of money and taxed costs shall bear interest on the amount of the award at 8% per annum from the date of entry, except as otherwise ordered by the court." (Amended effective April 1, 1975). Prior to amendment, the applicable rate was 6%; in other material respects the rule is, however, unchanged.

comment to the rule may be interpreted to allow a trial court discretion to award a higher rate upon its determination that the greater interest payment would be fair and equitable; however, we do not decide that issue. We do not believe that recent cases have altered the long standing New Jersey policy of deciding "questions pertaining to interest according to the plainest and simplest considerations of justice and fair dealing."[14]

Although the award of interest is left within the discretion of the district court,[15] it appears that the district court abused its discretion in this regard, resulting in injustice to Mid-Jersey. In order to perfect its appeal to this Court, FMI was required to place security with the district court in the amount of $300,000. FMI gave the district court a certificate of deposit from a commercial bank that earned interest at the rate of 8¼%. Under the New Jersey standard of "justice and fair dealing," grave doubts are raised concerning the equity in allowing FMI to profit in this fashion from the prosecution of an appeal, while Mid-Jersey remains inadequately compensated for the use of its money. For each period of delay, the differential in the rates of interest (8¼% less 6%) leaves Mid-Jersey in a relatively worse position than before. Moreover, recently the New Jersey rule was amended to provide for a post-judgment interest rate of 8% unless otherwise directed by the Court.[16]

Since we remand the case to the district court for a recalculation of pre-judgment interest, we direct the district court at the same time to inquire into and set an appropriate rate of post-judgment interest to be awarded, in light of equitable considerations and the New Jersey court rule.

If the certificate of deposit held by the district court, together with the accumulated interest, is insufficient to satisfy the claims of Mid-Jersey, Mid-Jersey may pursue any deficiency through a claim in the Chapter XI proceeding. If on the other hand, the claims of Mid-Jersey are met and an excess remains from the certificate of deposit, such remaining funds will revert to FMI, and be subject to the jurisdiction of the Chapter XI court.

The judgment of the district court will be vacated and the case remanded for a redetermination of interest charges.[17]

---

**14.** Brown v. Home Development Co., 129 N.J.Eq. 172, 18 A.2d 742, 746 (1941); Agnew Co. v. Paterson Bd. of Educ'n, 83 N.J.Eq. 49, 67, 89 A. 1046, aff'd, 83 N.J.Eq. 336, 90 A. 1135 (1914).

**15.** Speed v. Transamerica Corp., 235 F.2d 369, 374 (3d Cir. 1956).

**16.** N.J. Court Rule 4:42–11 (as amended, effective April 1, 1975). The comment accompanying the Rule does not make clear whether cases on appeal or on remand on April 1, 1975 are to be considered under the new rule. *See* note 13, *supra.*

**17.** It is urged that this case on remand be handled expeditiously so as to enable a speedy release to Mid-Jersey of the money due it.