**In the Matter of the CELOTEX CORPORATION, et al., Debtors.**

**Bankruptcy Nos. 90–10016–8B1, 90–10017–8B1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 13, 1991.

Jeffrey W. Warren, for debtor.

Ketchey, Horan, Hearn & Neukamm, for Asbestos plaintiffs.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, for The Unsecured Trade Creditors Committee.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, for claimant Marion George and Others.

Baron & Budd, P.C., Gillenwater, Nichol & Ames, Kazan, McLain, Edises & Simon, Ness, Motley, Lodeholt, Richardson & Poole, Jaques Admirality Law Firm, Greitzer & Locks, for Asbestos–Related Personal Injury Creditors.

William Knight Zewadski, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, for Unofficial Asbestos Health Claim Co–Defendants' Committee.

Kozyak, Tropin, Throckmorton & Humphreys, P.A., for the Asbestos Property Damage Claimants Committee.

Gillenwater, Nichol & Ames for Danny W. Berlin.

Verrill & Dana, Portland, Me., for The American Hospital Ass'n.

B. Mills Latham, for appellees.

## OMNIBUS ORDER ON MOTION TO LIFT STAY WITH REGARD TO CELOTEX APPEALS AND TO RELEASE SUPERSEDEAS BONDS THEREON

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon the (1) Motion Challenging Jurisdiction of Court over Property of Non–Debtors, (2) Motion to Lift Stay with Regard to Celotex Appeals and to Release Supersedeas Bonds Thereon, and (3) related issues raised by the enormous litigation in this case. By Order entered January 10, 1991, the Court denied the Motion Challenging Jurisdiction of Court over Property of Non–Debtors and granted, in part, the Motion to Lift Stay with Regard to Celotex Appeals and to Release Supersedeas Bonds Thereon. Specifically, the Court lifted the stay to enable the pending appellate actions to proceed but did not lift the stay with respect to the supersedeas bonds which Debtor posted in order to obtain stays pending appeals of the underlying litigations. One of the remaining issues is whether the supersedeas bonds posted by Debtor are property of the bankruptcy estate subject to the automatic stay and thus not available for payment to the asbestos-related bodily injury plaintiffs should their cases ultimately be affirmed on appeal. The Court finds such a determination to be a core proceeding. 28 U.S.C. § 157(b)(2)(A), (G), (O). *See also LTV Corp. v. Aetna Casualty and Surety Co. (In re Chateaugay Corp.),* 116 B.R. 887 (Bankr.S.D.N.Y.1990); *Garrity v. Leffler (In re Neuman),* 71 B.R. 567 (S.D.N.Y. 1987).

The Court, having considered the Motions, the record, and the memoranda of law submitted by the interested parties,[1] finds:

The Celotex Corporation and Carey Canada Inc. (collectively referred to as "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.) on October 12, 1990. At the time the petition was filed, over 141,000 asbestos-related bodily injury lawsuits were pending against Debtor.[2] On that date over 100 appeals were pending in asbestos-related bodily injury cases in which Debtor and others were appealing adverse judgments. Three of those pending appeals are of particular interest to this case.

On April 3, 1989, the United States District Court for the Eastern District of Texas entered a judgment against Debtor in

---

1. In the Order entered January 10, 1991, the Court directed Debtor and Movants (Asbestos Plaintiffs represented by the law firm of Wellborn, Houston, Adkinson, Mann & Sadler) to file legal memoranda addressing the issue of whether the supersedeas bonds are property of the estate. In addition, the Unsecured Trade Creditors Committee and B. Mills Latham submitted legal memoranda on the status of the supersedeas bonds. The Unsecured Trade Creditors Committee felt compelled to set forth its views on the supersedeas bond issue since resolution of that issue will have a direct and material effect upon all creditors of the estate. Latham, on November 28, 1990, was ordered to show cause why he should not be held in contempt for seeking release of a supersedeas bond posted by Debtor to obtain a stay pending appeal in *Celotex Corp. v. Tate,* 797 S.W.2d 197 (Tex.App.—Corpus Christi 1990). At the hearing held December 11, 1990, on the order to show cause, the Court directed Latham to file a memorandum on the supersedeas bond issue.

In addition to the memoranda filed by Movants, Debtor, the Unsecured Trade Creditors Committee, and Latham, memoranda on the supersedeas bond issue were filed by Marion George, the Asbestos–Related Personal Injury Creditors, hospital members of the American Hospital Association, the Unofficial Asbestos Health Claim Co–Defendants Committee, the Asbestos Property Damage Claimants, Greitzer and Locks, and Danny W. Berlin.

2. The Celotex Corporation is a major manufacturer of building and roofing products for residential and commercial use. Carey Canada Inc. had been a miner of raw chrysotile asbestos fibers. In addition to the pending asbestos-related bodily injury lawsuits, Debtor also has been a defendant in 310 asbestos-related property damage lawsuits.

the total amount of $2,593,625. *King v. Armstrong World Indus.*, No. M–85–44–CA. Debtor appealed this adverse judgment to the United States Court of Appeals for the Fifth Circuit.[3] In order to stay execution of the judgment pending appeal, Debtor posted a supersedeas bond issued by Northbrook Property and Casualty Insurance Company. The bond was executed on May 17, 1989, and approved by the District Court on May 26, 1989. Insurance proceeds were used as collateral to secure the bond issued by Northbrook.

On November 1, 1989, the District Court for the Fourth Judicial District, Rusk County, Texas, entered a judgment against Debtor in the total amount of $5,379,299.50. *Pool v. Fibreboard Corp.*, No. 86–363, and *Williams v. Fibreboard Corp.*, No. 88–08–293. The damage award was comprised of $4,179,299.50 in compensatory damages[4] and $1,200,000 in punitive damages. Debtor appealed this adverse judgment to the Court of Appeals of Texas, Sixth Judicial District, Texarkana. In order to stay execution of the judgment pending appeal, Debtor posted two supersedeas bonds issued by National Union Fire Insurance Company of Pittsburgh, Pa. Each bond was executed on February 1, 1990. A combination of cash and insurance was used as collateral to secure each bond issued by National Union.

On January 22, 1990, the United States District Court for the Eastern District of Texas entered a judgment against Debtor in the total amount of $6,417,625. *Glasscock v. Armstrong Cork Co.*, No. M–85–158–CA. Debtor appealed this adverse judgment to the United States Court of Appeals for the Fifth Circuit. In order to stay execution of the judgment pending appeal, Debtor posted a supersedeas bond issued by National Union Fire Insurance

Company of Pittsburgh, Pa. The bond was executed on February 5, 1990, and approved by the District Court on February 7, 1990. A combination of cash and insurance was used as collateral to secure the bond issued by National Union.

## I.

The genesis of any review of whether a supersedeas bond is property of the estate is the pre-Code decision of the Court of Appeals for the Third Circuit in *Mid–Jersey National Bank v. Fidelity–Mortgage Investors*, 518 F.2d 640 (3d Cir.1975). From that opinion black letter law has been ascribed by some: a supersedeas bond is not property of the estate, thus the automatic stay pursuant to Section 362 of the Bankruptcy Code does not preclude the judgment creditor from going against the surety bond. *See W.W. Gay Mechanical Contractor v. Wharfside Two*, 545 So.2d 1348 (Fla.1989); *J.M. Beeson Co. v. Sartori*, 553 So.2d 180 (Fla. 4th DCA 1989).

From *Mid–Jersey* we learn a deposit of funds by the debtor with the Clerk of the Court in lieu of a supersedeas bond is *in custodia legis*. The Third Circuit in *Mid–Jersey* determined the debtor had a "contingent reversionary interest as a potential beneficiary of the trust" in that supersedeas bond. *See also Vescovo v. First State Bank (In re Vescovo)*, 125 B.R. 468, 471 (Bankr.W.D.Tex.1990). Such a characterization has interesting connotations as well as incongruities. First, basic property law would suggest a reversionary interest is never contingent but is vested subject to divestment. Second, since the debtor, as appellant, may be successful on appeal, the debtor must be deemed under the *Mid–Jersey* theorem to be a potential beneficiary under the trust.[5] In such light, an argu-

---

**3.** The Court of Appeals has affirmed the judgment of the District Court. *King v. Armstrong World Indus.*, 906 F.2d 1022, *reh'g denied*, 914 F.2d 251 (5th Cir.1990), *cert. denied*, ―― U.S. ――, 111 S.Ct. 2236, 114 L.Ed.2d 478 (1991).

**4.** Debtor's liability for compensatory damages was joint and several with four or five co-defendants. The jury determined Debtor's portion of the liability was either 15% or 25% depending

upon the particular asbestos plaintiff. The trial court determined that each defendant have contribution and indemnity against each other defendant in accordance with the percentage findings of the jury.

**5.** Such a deposit is likened to a trust where the court is the trustee with the duty to determine the beneficiaries at the end of the appellate process. *See Gnidovec v. Alwan (In re Alwan Bros.)*, 105 B.R. 886 (Bankr.C.D.Ill.1989).

ment can be made that the debtor has a property interest in a supersedeas bond. Section 541(a)(1) of the Bankruptcy Code states "all legal or equitable interests of the debtor in property as of the commencement of the case" is property of the estate "wherever located and by whomever held." Third, if the debtor holds a future interest or an equitable interest as a beneficiary of a trust under *Mid–Jersey*, that interest must be property of the estate even if that interest is subject to divestment.[6]

Parenthetically, one must remember the dichotomy between the supersedeas bond and the surety agreement and collateral securing the bond when making this analysis. The latter two are property of the estate. Whether a debtor can reject or assume the surety agreement or avoid it and thus seek return of the collateral may be an issue solely between the debtor and its surety.[7] The status of the supersedeas bond is a distinct, but interconnected, issue.

This Court has reviewed *Mid–Jersey* and its progeny. The *Mid–Jersey* court, considering pre-Code law, did not have before it the expansive views established by Congress in Section 541 and Section 362 of the Bankruptcy Code. The other courts which have reviewed the issue of supersedeas bonds as property of the estate appear to have adopted the *Mid–Jersey* rubric without an analysis of the appellate process

vis-a-vis the Bankruptcy Code. *Moran v. Johns–Manville Sales Corp.*, 28 B.R. 376, 377–378 (N.D.Ohio 1983); *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.)*, 26 B.R. 420, 433 (Bankr.S.D.N.Y.1983); *W.W. Gay Mechanical Contractor*, 545 So.2d at 1350; *J.M. Beeson Co.*, 553 So.2d at 181.

## II.

As to federal litigation, Rule 62(d) of the Federal Rules of Civil Procedure permits an appellant to stay execution of the judgment by posting a bond.[8] Thus, the judgment creditor is protected by the supersedeas bond during the pendency of the appeal. *See Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1498, *reh'g denied*, 788 F.2d 1570 (11th Cir.1986); *see also Avirgan v. Hull*, 125 F.R.D. 185 (S.D.Fla. 1989). Only when the appellate process is concluded is the judgment creditor able to take action against the bond and the surety.

The act of filing a petition in bankruptcy during the pendency of an appellate case does not alter the operation of Rule 62 of the Federal Rules of Civil Procedure nor allow the judgment creditor or its agents to proceed upon some perfervid, yet fallacious, belief that it is now open season on the supersedeas bond.[9] By the filing of the petition, the automatic stay is activated and

---

**6.** If some trust theory is to be used, this Court would suggest utilizing a resulting trust theory rather than making the debtor a beneficiary of some hypothetical trust.

**7.** While these matters may not add any greater status to the bond as property of the estate, they have been of concern to the reorganizational process. *See Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.)*, 831 F.2d 586 (5th Cir. 1987); *In re Chateaugay Corp.*, 116 B.R. at 896–899.

Any inquiry into the status of the surety bond and any collateralization by the debtor may include:
  1. The contract establishing the bond.
  2. The characterization of the contract under bankruptcy or non-bankruptcy law.
  3. The distribution of any collateral held as security for the bond.
  4. The status of any security in the bankruptcy proceeding.
For the most part, these issues arise between the debtor and its surety when the bond is not

court-affiliated such as a deposit with the clerk. It is this Court's opinion that whether the underlying bond is property of the estate is not predicated upon a determination that a judgment is a fraudulent transfer or the surety contract is executory.

**8.** Most states provide similar protection to a judgment creditor. *See, e.g.*, Fla.R.App.P. 9.310. *See also* Fed.R.Civ.P. 65.1; Bankruptcy Rule 9025.

**9.** Generally, it is in the best interest of the estate to lift the automatic stay to allow the appellate process to be completed. Once the decision of the appellate court is final, the status of the supersedeas bond as property of the estate can be ascertained. *See Atlantic Richfield Co. v. Good Hope Refineries*, 604 F.2d 865 (5th Cir. 1979). This Court has consistently granted relief from the stay to allow any pending asbestos-related bodily injury appeal to be concluded.

all proceedings against a debtor, including appellate proceedings, are stayed. 11 U.S.C. § 362(a)(1). *See O'Neill v. Continental Airlines (In re Continental Airlines)*, 928 F.2d 127 (5th Cir.1991); *Balaber–Strauss v. Reichard (In re Tampa Chain Co.)*, 835 F.2d 54 (2d Cir.1987); *Cathey v. Johns–Manville Sales Corp.*, 711 F.2d 60 (6th Cir.1983), *cert. denied*, 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986). Moreover, any act to obtain possession of, or exercise control over, any property of the estate is stayed. 11 U.S.C. § 362(a)(3).

If at the time of filing the petition the appellate process has not been concluded, the debtor still has an interest in the supersedeas bond cognizable under Section 541 of the Bankruptcy Code subject to the interest being divested if the debtor is unsuccessful once the appellate process is completed. Fed.R.App.P. 41(a). *See Saper v. West*, 263 F.2d 422 (2d Cir.), *cert. denied*, 360 U.S. 916, 79 S.Ct. 1433, 3 L.Ed.2d 1532 (1959). This approach is correct, for otherwise all supersedeas bonds in place at the time of the filing of the petition in bankruptcy, notwithstanding the status of any appellate process, would be subject to attack by the judgment creditor as not being property of the estate. Continuing protection of the bond during the appeal is consistent with *Mid–Jersey*, 518 F.2d at 644. *See also Grubb v. Federal Deposit Ins. Corp.*, 833 F.2d 222 (10th Cir.1987).

If such were not the case, the debtor, after a successful appeal, would have some new cognizable rights or property coming back from the release of the supersedeas bond now magically becoming property of the estate. If a reorganization plan had been confirmed by the time the appellate process was concluded, a debtor could claim these returning bond funds are not available to creditors. 11 U.S.C. § 1141(b). The Court of Appeals for the Seventh Circuit in *Sheldon v. Munford, Inc.*, 902 F.2d 7 (7th Cir.1990), clearly saw all these contingencies and their attendant results when it denied a judgment creditor's attack on the debtor's supersedeas bond during the appellate process.

### III.

■ Where a debtor, upon the filing of the bankruptcy petition, is an unsuccessful appellant in the total appellate process, or during the bankruptcy case is unsuccessful in its appeal, its property interest in the bond can be divested and any efforts by the debtor to prevent the judgment creditor from proceeding against the supersedeas bond must be sought under Section 105 of the Bankruptcy Code.

Upon Debtor's filing its bankruptcy petition, this Court entered an order pursuant to Section 105 which sought to augment the stay protection afforded by Section 362(a). Such order was upon Debtor's motion and was for the purpose of precluding, among other things, judgment creditors from proceeding in various state and federal courts against supersedeas bonds without first coming before this Court.[10]

The implementation of the Section 105 stay was required because of the complexity of Debtor's case. There are over 141,000 asbestos-related bodily injury cases pending against Debtor in almost every state and federal jurisdiction. There are over 100 asbestos-related bodily injury cases on appeal. Judgments totaling nearly 70 million dollars are being stayed by the supersedeas bonds posted by Debtor while the appellate processes proceed. All super-

10. While a few judgment creditors have proceeded against the supersedeas bonds without first coming before this Court, so far few have claimed this Court lacks authority to issue a Section 105 stay without Debtor's filing an adversary proceeding. While Bankruptcy Rule 7001 requires an adversary proceeding if a party is seeking an injunction, this Court believes the plain language of Section 105 allows this Court, *sua sponte,* to enter a stay order against any and all parties for specific or general purposes in order to ensure the integrity of the bankruptcy system and to protect the debtor in the initial stages of a reorganization proceeding. *See LTV Steel Co. v. Board of Educ. of the Cleveland City School Dist. (In re Chateaugay Corp.)*, 93 B.R. 26, 29 (S.D.N.Y.1988); *Findley v. Blinken (In re Joint E. and S. Dists. Asbestos Litig.)*, 120 B.R. 648, 658 (E. & S.D.N.Y.1990); *In re Larmar Estates, Inc.*, 5 B.R. 328 (Bankr.E.D.N.Y.1980). *See also In re Roberts*, 68 B.R. 1004 (Bankr.E.D. Mich.1987).

sedeas bonds are secured by property of Debtor's estate.

Further, many of the pending asbestos-related bodily injury cases involve a number of co-defendants which are now in bankruptcy. Because of the automatic stay with respect to Debtor's and co-defendants' cases, various asbestos-related litigation throughout the United States has come to a halt. Similarly, the use of multi-district litigation procedures is not available. *See* Judicial Conference of the United States, Report of the Ad Hoc Committee on Asbestos Litigation (March 1991). In light of the fact 28 U.S.C. § 157 precludes this Court from liquidating the asbestos-related bodily injury cases, other than estimating claims for voting purposes, there is a potential this Court will be faced with thousands, perhaps tens of thousands, of motions to lift the stay to proceed in the various trial courts notwithstanding the fact 28 U.S.C. § 157(b)(5) does not provide an expeditious method of dealing with these asbestos-related bodily injury cases.[11] If there is potential peripheral personal injury litigation which will circumvent the review process of either the bankruptcy court or the district court and distort the reorganization process, then Section 105 must be used. *See MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 93 (2d Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

At the time of filing its petition, Debtor had been engaged in continuous litigation relating to insurance coverage on asbestos-related injury claims. Debtor, asbestos litigation co-defendants and various insurance companies struck a pre-petition agreement which created a dispute resolution mechanism to facilitate claims settlements. The internal inability of this alternative dispute resolution system to proceed, coupled with other litigation over insurance coverage, has frustrated the tort litigation peripheral to this bankruptcy case. These factors

complicate any procedures to deal with known asbestos claimants as well as those whose claims arose prior to the filing of the bankruptcy, but whose injuries have not yet manifested themselves. In light of the inability of the *Johns–Manville* trust to handle such potential claims, this Court finds it abundantly necessary to stay any and all parties from proceeding against Debtor in any forum until a determination can be made of the efficacy of any remedy, claim, or assertion of jurisdiction. Failure to bring such stability to Debtor's case in its initial stages would place this bankruptcy case on the dangerous edge of things. *Erti v. Paine Webber Jackson and Curtis, Inc. (In re Baldwin–United Corp. Litig.)*, 765 F.2d 343, 349 (2d Cir.1985).

The federal courts of appeals, upon viewing injunctions granted during pandemic tort-bankruptcy cases such as this have consistently understood these circumstances and have endorsed the jurisdiction and utilization of a stay as a case management control mechanism. The Court of Appeals for the Second Circuit in the *Johns–Manville* bankruptcy acknowledged Section 105 as an authorized instrumentality to preclude actions which may "impede the reorganization process." *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). The Court of Appeals for the Fourth Circuit in *A.H. Robins* twice upheld the stay mechanism to thwart actions "which will have an adverse impact on the Debtor's ability to formulate a Chapter 11 plan." *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Oberg v. Aetna Casualty and Surety Co. (In re A.H. Robins)*, 828 F.2d 1023 (4th Cir.1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988). In the latter decision, the Fourth Circuit clearly took the position

---

**11.** The nexus between Section 362(a) and 28 U.S.C. § 157 is perfectly illustrated in Debtor's case. Section 362 stays all judicial action against Debtor. If litigants/creditors wish to proceed, they must seek relief from the stay in bankruptcy court. The bankruptcy court, pursuant to 28 U.S.C. § 157(b)(2)(B), cannot deal with personal injury claims and can only provide relief by allowing the litigants to proceed to district court where it, as gatekeeper over such claims, determines where they will be liquidated. 28 U.S.C. § 157(b)(5).

that the bankruptcy court could stay litigation which would create a "substantial burden on ... [the debtor], detract[ing] from the reorganization process." *In re A.H. Robins*, 828 F.2d at 1026. In another asbestos case, the Court of Appeals for the Fifth Circuit affirmed the bankruptcy court's jurisdiction to use Section 105 to stay personal injury suits filed by asbestos workers against debtors, insurers, and executives. *In re Davis*, 730 F.2d 176 (5th Cir.1984).

■ These decisions reinforce fundamental bankruptcy policy to stop ongoing litigation and to prevent peripheral court decisions from dealing with issues, properties, or entities involved in a debtor's reorganization process without first allowing the bankruptcy court to have an opportunity to review the potential effect on the debtor. Where bankruptcy courts in "mega" cases such as this case are required to deal with complex litigation involving numerous parties, joint and several liability, and multi-million dollars in claims and assets, not to mention potential conflicts with other judicial determinations, the powers of the bankruptcy court under Section 105 must in the initial stage be absolute, unless limited by the Bankruptcy Code or other federal laws. Clearly, the role of Section 105 in this type of case is first to protect the reorganization process.

## IV.

■ As to the utilization of Section 105 vis-a-vis the supersedeas bonds, once the judgment creditor has been successful throughout the appellate process, the judgment creditor is not able to proceed against the supersedeas bond without seeking to vacate the Section 105 stay in this Court. Under these circumstances, it will be Debtor's burden to establish that the Section 105 stay should continue. The Court's in-

quiry will include Debtor's ability to avoid any final judgment under the Bankruptcy Code and the necessity to protect its sureties or disenfranchise them if such surety agreements can be considered executory contracts or avoided under the avoiding powers in the Bankruptcy Code. (11 U.S.C. §§ 365, 547, and 548.) Additionally, consideration will be given to Debtor's ability to deal with the targeted litigation within the reorganization plan and the effect on that process if the Section 105 stay is extinguished. The analysis may also include the treatment of those judgments which include punitive damages [12] or joint and several liability or contribution with other asbestos co-defendants. This Court does not seek to establish an exhaustive list of inquiry, as each specter of the Section 105 stay may relate differently to an aspect of Debtor's reorganization process which seeks to be protected. At this juncture the Section 105 stay is more analogous to the protection of third parties as provided for in *A.H. Robins* and *Johns–Manville* than it is to some aberration as some would postulate.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that:

1. The supersedeas bond is property of the estate as long as the appellate process upon which it is based is proceeding, and the automatic stay of Section 362 applies to any action to enforce a judgment against the supersedeas bond.

2. Where this Court has granted relief from the stay to complete the appellate proceedings involving Debtor and the appellate process has concluded in favor of the judgment creditor, that judgment creditor is precluded from proceeding against any supersedeas bond without first seeking to vacate the Section 105 stay in this Court.

---

**12.** Section 726(a)(4) of the Bankruptcy Code provides that punitive damages are fourth in line for distribution in a Chapter 7 liquidation. Although Section 726(a)(4) is inapplicable to Chapter 11 reorganizations (*In re A.H. Robins Co.*, 89 B.R. 555, 560 (E.D.Va.1988); *In re Alwan Bros.*, 115 B.R. 148, 151 (Bankr.C.D.Ill.1990)), it is well-established that bankruptcy courts have inherent equitable power to disallow, limit, or subordinate claims for punitive damages in Chapter 11 reorganizations. *In re A.H. Robins Co.*, 89 B.R. at 562; *In re Apex Oil Co.*, 118 B.R. 683, 699 (Bankr.E.D.Mo.1990); *In re Johns–Manville Corp.*, 68 B.R. 618, 627 (Bankr.S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y.1987).

3. Where at the time of filing the petition, the appellate process between Debtor and the judgment creditor had been concluded, the judgment creditor is precluded from proceeding against any supersedeas bond posted by Debtor without first seeking to vacate the Section 105 stay entered by this Court. It is further

ORDERED, ADJUDGED AND DECREED except as to this Court's orders granting relief from the automatic stay to complete the appellate process, Movants' Motion to Lift Stay with Regard to Celotex Appeals and to Release Supersedeas Bonds Thereon is denied. It is further

ORDERED, ADJUDGED AND DECREED the Section 105 stay entered by this Court on October 17, 1990, continues in effect.

DONE AND ORDERED.