**In the Matter of The CELOTEX CORPORATION, et al., Debtors.**

**Bankruptcy Nos. 90–10016–8B1, 90–10017–8B1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 29, 1992.

M. Elizabeth Wall, Honigman Miller Schwartz and Cohn, Tampa, Fla., for Asbestos Health Claimants Committee.

Alani Golanski, New York City, for Angelina O'Brien.

Raymond C. Farfante, Jr., Tampa, Fla., Melvin I. Friedman, New York City, for Mary McCorry and Sylvonnia Stridiron.

Rex Houston, Henderson, Tex., Randy Fabel, for "The King Group" Lloyd and Louan King, et al.

Thomas A. Sweeny, Kansas City, Mo., for William A. Angotti and Isabella Angotti.

Stephen J. Kiely, Salem, Mass., for Mary Gambacorta.

H. Douglas Nichol, Paul T. Gillenwater, Knoxville, Tenn., for Danny Wilburn Berlin.

Joseph D. Shein, Philadelphia, Pa., Suzanne Reilly, for Charles and Julia Rose.

James H. Rion, Jr., Columbia, S.C., J. Michael Papantonio, Pensacola, Fla., for Gordon L. House and Gladys House.

Michael A. Patrick, for Estate of Mark Thomas Hynes.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, Fla., for Celotex Corp. et al.

Sara Kistler, Asst. U.S. Trustee.

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., Miami, Fla., for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., Tampa, Fla., for Creditors Committee of Unsecured Creditors.

William Knight Zewadski, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, Fla., for Unofficial Asbestos Health Claim Co–Defendants Committee.

## ORDER ON MOTIONS FOR RELIEF FROM SECTION 105 STAY

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for final evidentiary hearing upon several Motions for Relief from the Section 105 Stay.[1] Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.) on October 12, 1990. Debtor is a manufacturer of building products. Through the course of merger with, and acquisition of, other corporations, Debtor has been involved in a multitude of lawsuits alleging damage caused by asbestos products sold by it or its predecessors. Prior to filing bankruptcy, Debtor had be-

---

[1] Motions seeking relief from the Section 105 stay filed by Mary McCorry and Sylvonnia Stridiron; Lloyd and Louan King, et al.; Danny Wilburn Berlin; Angelina O'Brien; William A. and Isabella Angotti; Mary Gambacorta; Gordon L. and Gladys House; the Estate of Mark Thomas Hynes; and Charles and Julia Rose were heard on October 14, 1991, and March 13 and April 25, 1992.

come the judgment debtor in over 100 asbestos lawsuits[2] and had posted various supersedeas bonds to stay collection of these judgments pending appeals. These bonds were collateralized by millions of dollars of Debtor's property.

Upon the filing of the bankruptcy case, this Court was presented the issue of whether, during the pendency of the asbestos appeals, the supersedeas bonds are property of Debtor's estate. On October 17, 1990, in the initial stages of this case, this Court entered an Order Granting Emergency Motion for Determination of Applicability of § 362 Stay to Pending Matters or, in the Alternative, for Extension of § 362 Stay to Pending Matters, which established a Section 105 stay prohibiting all entities from, *inter alia*, proceeding against Debtor or property of Debtor's estate or enforcing against Debtor or property of Debtor's estate any judgment obtained against Debtor. On June 13, 1991, this Court determined the supersedeas bonds were property of Debtor's estate as long as the appellate process for which each bond was posted had not concluded. *In re Celotex Corp.*, 128 B.R. 478 (Bankr. M.D.Fla.1991). *See also Borman v. Raymark Indus.*, 946 F.2d 1031 (3d Cir.1991). If the judgment creditor prevails on appeal, the supersedeas bond would no longer be property of the estate, but would be protected by the Section 105 stay. *See Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172 (D.Colo.1987). At that stage, any judgment creditor wishing to proceed against the supersedeas bond must seek relief from the Section 105 stay. Debtor bears the burden of establishing the Section 105 stay should continue.

The Court's inquiry into whether the Section 105 stay should continue includes, *inter alia*, Debtor's ability to avoid any final judgment under the Bankruptcy Code, the necessity of protecting or disenfranchising Debtor's sureties, Debtor's ability to deal with the asbestos litigation within the reorganization plan and the effect on that process if the Section 105 stay were to be lifted, the treatment of the punitive damage portion of any judgment and the treatment of joint and several liability, contribution, and indemnification from co-defendants in other litigation. *In re Celotex Corp.*, 128 B.R. at 484.

At the hearings Debtor submitted into evidence copies of all insurance policies covering products liability actions based upon asbestos exposure, copies of settlement agreements between Debtor and various insurers, copies of most of the supersedeas bonds posted by Debtor pre-petition, copies of Movants' final judgments, copies of agreements between Debtor and the bonding companies, and copies of various financial data relating to Debtor.

A party seeking injunctive relief must generally establish (A) likelihood of success on the merits, (B) irreparable harm, (C) threatened harm outweighs possible harm to enjoined party, and (D) minimal harm to the public interest. *Snook v. Trust Co. of Georgia Bank, N.A.*, 909 F.2d 480, 483 (11th Cir.1990). Viewing the continuance of the Section 105 stay under the criteria for obtaining an injunction, the analysis takes the following form:

A. Likelihood of Debtor's success on the merits: Debtor's likelihood of success on the merits should be measured not by Debtor's ability to avoid or subordinate the claims of the judgment creditors or by Debtor's ability to obtain confirmation of a plan, but rather by Debtor's ability to preserve the estate while simultaneously protecting or avoiding the claims of the judgment creditors. This criterion requires Debtor to proceed in a timely fashion to avoid or subordinate the claims of the judgment creditors, formulate a plan of reorganization, and provide adequate protection for those judgment creditors protected by supersedeas bonds. It is clear Debtor has the ability to proceed in such a fashion.

B. Irreparable harm to Debtor: Debtor, in all instances, has collateralized the su-

---

**2.** At the time of filing the bankruptcy case, there were over 141,000 lawsuits pending against Debtor and other defendants involving asbestos-related bodily injury claims, asbestos-related property damage claims, and environmental claims. Pre-petition Debtor or its insurers had paid out over $361,000,000 to asbestos-related bodily injury claimants.

persedeas bonds. The collateral has taken various forms, but one type in particular is illustrative of the linkage associated with irreparable harm. Debtor and many of its insurers on asbestos claims have settled long-ongoing disputes over insurance coverage. Some of these settlement agreements established the maximum amount of insurance coverage, provided for payment to Debtor of these coverage amounts over time, and provided such payments and contract rights could be held by the insurance company as collateral for supersedeas bonds issued on behalf of Debtor in some of the asbestos cases. The supersedeas bonds posted in the *House* and *Hynes* cases fall into this category.

Dissolving the Section 105 stay would merely shift the battleground: if the Section 105 stay were lifted to enable the judgment creditors to reach the sureties, the sureties in turn would seek to lift the Section 105 stay to reach Debtor's collateral, with corresponding actions by Debtor to preserve its rights under the settlement agreements. Such a scenario could completely destroy any chance of resolving the prolonged insurance coverage disputes currently being adjudicated in this Court. The settlement of the insurance coverage disputes with all of Debtor's insurers may well be the linchpin of Debtor's formulation of a feasible plan.[3] Absent the confirmation of a feasible plan, Debtor may be liquidated or cease to exist after a carrion feast by the victors in a race to the courthouse.

C. Threatened harm to Debtor outweighs any possible harm to judgment creditors: Movants are correct in their characterization of this dispute as a matter of risk distribution. All things being equal, they say, the risk should be placed on Debtor and its sureties. These judgment creditors have been successful through the completed appellate process and, in a non-bankruptcy context, would be entitled to have their judgments satisfied. Within the bankruptcy context, however, any possible harm to the judgment creditors can be minimized through the establishment of an adequate protection mechanism.

D. Minimal harm to the public interest: There are probably hundreds of thousands of people who have asbestos-related injuries who, but for timing, would have attained the status of judgment creditors protected by supersedeas bonds.[4] If Debtor is not free to formulate a feasible plan, these potential claimants, known or unknown, will be left with little or no recourse.

There are those who went before us. There were feasible plans, applauded by many, and approved by knowledgeable adjudicators. Such have fallen on troubled times. Their feet of clay have been exposed, and like Ozymandias,[5] their plans may leave little to be observed. With knowledge of the Johns–Manville reorganization[6] and the complexities associated with the A.H. Robins confirmed plan[7], this Court will not put forces into motion which may foster an apocalypse when other timely methods can protect all parties until Debtor's plan can be evaluated by all classes. It is this Court's perception this is

---

**3.** Debtor has brought an adversary proceeding against numerous insurance companies and underwriting syndicates seeking a declaratory judgment concerning the interpretation of the insurance policies and the existence and extent of coverage under those policies for asbestos-related claims and environmental claims asserted against Debtor. *Celotex Corp. v. AIU Insurance Co.* (Adv. No. 91–40).

**4.** This group includes any litigant who has not yet obtained a determination upon the merits of his case as well as any person who may have suffered an asbestos-related injury which has not yet manifested itself. Debtor estimates at least 100,000 to 150,000 pre-petition claimants.

In addition, consideration for asbestos property damage claims cannot be overlooked.

**5.** Percy Bysshe Shelley, Ozymandias (1818).

**6.** *See Findley v. Blinken (In re Joint E. and S. Dists. Asbestos Litig.),* 120 B.R. 648 (E. & S.D.N.Y.1990); *Findley v. Blinken (In re Joint E. and S. Dists. Asbestos Litig.),* 129 B.R. 710 (E. & S.D.N.Y.1991).

**7.** *See Menard–Sanford v. Mabey (In re A.H. Robins Co.),* 880 F.2d 694 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *Blum v. Unnamed Claimants (In re A.H. Robins Co.),* 880 F.2d 779 (4th Cir.1989).

why none of the committees in this case have taken up Movants' cause.

Moreover, those sureties protected by the Section 105 stay have yet to exhaust the benefits accruing from their settlement agreements with Debtor. They must participate in the protection of the judgment creditors. Many of them, through their agreements, are obligated to pay Debtor amounts equal to the agreed insurance coverage. Admittedly, the sureties may hold those amounts as secured creditors or may have rights of setoff or recoupment. Nonetheless, their rights may be subject to avoidance, subordination, rejection or modification through the bankruptcy process. They, too, recognize that just the inquiry into such matters along with the dissolution of the Section 105 stay could transform this case into another *Jarndyce v. Jarndyce.*[8]

Asceticism rather than prophecy should normally be the shibboleth of most matters in bankruptcy. If this Court believed its decision-making were anyway close to a Procrustean solution, it would stop here. However, it is clear the dour countenance of irreparable harm appears before us and portends a resolution which in itself serves the public interest.

Considering the evidence, the record, and the argument of counsel, this Court finds there is sufficient evidence to support the continuation of the Section 105 stay. This determination is predicated upon several factors. First, if the Section 105 stay were terminated, there would be an avalanche of litigation by various bond sureties seeking to proceed against Debtor's collateral supporting those supersedeas bonds because the judgment creditors would be free to go against those bonds. This Court would be faced with the same complex scenario of balancing the interests of Debtor's survival in bankruptcy and the protection of the property of the estate vis-a-vis the rights of the bond sureties. This balance can be

struck more equitably by protecting the judgment creditors at the same level as when the bankruptcy was filed. Continuation of the Section 105 stay benefits not only Debtor but all creditors, including numerous asbestos claimants who have not yet obtained judgments. The judgment creditors' claims are capable of being considered within the Chapter 11 plan. A Chapter 11 plan may be able to alter the immediate collection rights of the bond sureties, thus preserving the collateral for other, as yet unknown, creditors. Such an alteration of interests may be acceptable to many sureties who are also involved as Debtor's insurers on asbestos claims.

Second, the judgment creditors, while having unique status within a bankruptcy context, are not impaired where their positions during the bankruptcy case are not eroded and their treatment under the plan provides for a separate classification of their claims. It would appear these judgment creditors' claims would be allowed secured claims upon the completion of the appellate process, especially since this Court does not have jurisdiction to consider any objections to their claims unless liquidated. Once the claims are liquidated, any court may, *inter alia*, be limited by the doctrine of issue or claims preclusion.[9] Avoidance or subordination of Movants' rights appear to be the only potential avenues for Debtor.[10]

Third, consideration must be given to the numerous other asbestos claimants who do not have the advantage of having judgments or supersedeas bonds to protect their claims during the bankruptcy. This potentially large number of known and unknown asbestos claimants will have to be dealt with by Debtor in its plan. The history of similar bankruptcy cases and their proposed solutions to these problems has acquainted us with the uncertainty of those solutions. This Debtor, like any other similarly situated debtor, cannot afford any

**8.** Charles Dickens, Bleak House (1853).

**9.** *See, e.g., In re Standard Insulations, Inc.,* 138 B.R. 947 (Bankr.W.D.Mo.1992).

**10.** *See, e.g., Novak v. Callahan (In re GAC Corp.),* 681 F.2d 1295 (11th Cir.1982); *In re A.H. Robins* *Co.,* 89 B.R. 555 (E.D.Va.1988); *In re Apex Oil Co.,* 118 B.R. 683 (Bankr.E.D.Mo.1990); *In re Johns–Manville Corp.,* 68 B.R. 618 (Bankr. S.D.N.Y.1986), *aff'd,* 78 B.R. 407 (S.D.N.Y.1987).

inappropriate resolution of such claims. Debtor's quest to formulate a comprehensive, durable solution will best be conducted in an environment unfettered by multiple attacks on its collateral or successive disputes presented to this Court for resolution. Such protection, however, requires Debtor to give adequate protection to the judgment creditors.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motions for Relief from the Section 105 Stay are denied on the following conditions:

1. Within 30 days of the entry of this Order, Debtor shall provide the Court with a report listing all judgment creditors protected by supersedeas bonds, the amount of each judgment, the amount of each supersedeas bond, the surety for each bond, and the collateral for each bond.

2. Debtor shall set out in the report whether any supersedeas bond protecting any judgment was insufficient, as of the date of filing the petition, to cover the judgment amount and interest allowed by law.

3. If any supersedeas bond is insufficient or will become insufficient to protect completely any judgment affirmed on appeal through confirmation of the plan, Debtor, within 30 days of filing the report, shall create an interest-bearing reserve account or increase the face amount of any supersedeas bond to cover the full amount of any judgment through confirmation. Such reserve account, if established, shall be disbursed only upon order of this Court.

4. Notwithstanding Debtor's obligation, any surety of Debtor whose collateral is capable of bearing interest shall establish an escrow account which bears interest at the highest prevailing rate allowed by law. In no case, however, shall the supersedeas bond, or subsequent protection under this Order, be less than the amount of the judgment plus interest. The Court reserves jurisdiction to determine whether the interest accruing in the escrow account shall be for the benefit of the judgment creditors, the surety, or Debtor. No funds shall be disbursed from such escrow account without order of this Court.

5. Debtor shall classify any claim of judgment creditors whose judgments are protected by supersedeas bonds in a separate class in its Chapter 11 plan. Notwithstanding the classification, Debtor shall provide for such creditors' allowed claims to be paid in full unless otherwise agreed by the judgment creditor, individually, or determined by this Court. It is further

ORDERED, ADJUDGED AND DECREED that Debtor shall file any preference action or any fraudulent transfer action or any other action to avoid or subordinate any judgment creditor's claim against any judgment creditor or against any surety on any supersedeas bond within 60 days of the entry of this Order

DONE AND ORDERED.