In re FARMLAND INDUSTRIES,
INC., et al., Debtors.

Safeco Insurance Company
of America, Plaintiff,

v.

Farmland Industries, Inc.; Farmland
Transportation, Inc.; Anthony M. Bri-
da, Inc.; B & D Motors, Inc.; Corn-
husker Motor Lines; Direct Trans-
port, Inc.; Michale Bennett Trucking,
Inc.; R.E. Garrison Trucking, Inc.;
Sparhawk Trucking, Inc.; Steiner &
Son, L.L.C.; Agricultural Express; All
Transportation Services, Inc.; Pin-
hook Transportation; Transcarriers,
L.L.C.; Dannie Glider, Inc.; Heavy
Duty Trux. Ltd.; and E.C. Transporta-
tion, Defendants.

Bankruptcy No. 02–50557–JWV.
Adversary No. 03–4024–JWV.

United States Bankruptcy Court,
W.D. Missouri.

March 4, 2003.

Cassandra L. Writz, Cynthia Dillard
Parres, Laurence M. Frazen, Mark G.
Stingley, Robert M. Thompson, Tammee
E. McVey, Lloyd A. Palans, Michelle M.
Masoner, Bryan Cave LLP, Gene A. De-
Leve, Ronald S. Weiss, Berman, DeLeve,

Kuchan & Chapman, Michael D. Hockley, Spencer, Fane, Britt & Browne, Kansas City, MO, Frank W. Lipsman, Morton, Hubbard, Ruzicka & Kreamer, Olathe, KS, for debtor/defendant.

Bruce E. Strauss, Thomas N. Lane, Merrick, Baker, Strauss, Kansas City, MO, for plaintiff.

### MEMORANDUM ORDER

JERRY W. VENTERS, Bankruptcy Judge.

Subsequent to filing its Amended Adversary Complaint for Interpleader, Declaratory Relief, Indemnification, Adequate Protection, Adequate Assurance and Exoneration, or in the Alternative, Quia Timet (the "Amended Complaint"), Safeco Insurance Company of America ("Safeco") filed an Amended Motion to Interplead Bond Penal Sum. When considering this motion, the Court determined that it would be proper to examine whether this Court has subject matter jurisdiction over the controversy as alleged in the Amended Complaint.[1] Based on the following discussion, the Court determines that it lacks subject matter jurisdiction over Safeco's causes of action against all of the defendants (collectively the "Other Defendants") other than Farmland Industries, Inc. and Farmland Transportation, Inc. (collectively "Farmland"), and will dismiss that part of the Amended Complaint. However, the Court will hold in abeyance Safeco's causes of action against Farmland pending a determination in an appropriate forum whether Safeco is liable to the Other Defendants under the surety bond. If an appropriate forum determines that Safeco is liable to the Other Defendants, Safeco may continue with prosecution of the causes of action

pending against Farmland. If an appropriate forum determines that Safeco is not liable to the Other Defendants, Safeco promptly will dismiss the Amended Complaint, except to the extent that it is pursuing recovery for sums already paid to Laurel Trucking Co. Inc. and Meadowlark Transportation (who are not defendants in this adversary proceeding) for claims they made under the surety bond. The Court will schedule a status conference every six months in this adversary proceeding in order to track the progress of Safeco's action against the Other Defendants. In accordance with the Court's ruling, Safeco's Amended Motion to Interplead the Bond Penal Sum will be denied.

### Discussion

Because the Court has raised *sua sponte* the issue of subject matter jurisdiction, in the recitation of the factual background of this adversary proceeding the Court will apply the well established principle that when considering whether a proceeding should be dismissed for lack of subject matter jurisdiction, the bankruptcy court must accept as true the adversary complaint's well-pleaded factual allegations and must draw reasonable inferences in the plaintiff's favor. *See Blackmon Auctions, Inc. v. Van Buren Truck Center, Inc.,* 901 F.Supp. 287, 288–89 (W.D.Ark. 1995); *Schroeder v. United States (In re Van Dyke),* 275 B.R. 854, 857 (Bankr. C.D.Ill.2002); *Bayview Plaza Assocs. Ltd. P'ship v. Town of North East, Maryland (In re Bayview Plaza Assocs. Ltd. P'ship),* 209 B.R. 840, 841 (Bankr.D.Del.1997).

In its Amended Complaint Safeco states that on or about November 16, 1988, and October 6, 1993, Farmland Industries, Inc. executed in favor of Safeco certain General

---

**1.** "Courts are obligated to examine their own jurisdiction and subject matter jurisdiction may be raised at any time, by a party or the court, *sua sponte.*" *May v. Missouri Dep't of Revenue (In re May),* 251 B.R. 714, 719 (8th Cir. BAP 2000).

Agreements of Indemnity whereupon Farmland Industries, Inc. agreed to, *inter alia*, indemnify and hold Safeco harmless for all loss and expense, including attorney's fees, incurred by Safeco by reason of having executed any surety bonds on its behalf, or on behalf of any subsidiary of Farmland Industries, Inc., whether then owned or thereafter acquired, or for any other entity for whom Farmland Industries, Inc. requested a bond or bonds. In reliance upon the General Agreements of Indemnity, and at the behest of Farmland Industries, Inc., Safeco, as surety, issued on behalf of Farmland Transportation, Inc., as principal, a certain Interstate Contract Broker's Surety Bond Number 5575570 (the "Bond"), naming the Federal Highway Administration as obligee, in the penal sum of $10,000.00. The Bond was issued for the ultimate benefit of persons or entities doing business with Farmland Transportation, Inc. and to assure certain regulatory obligations owed by Farmland Transportation, Inc. to the Federal Highway Administration. Under the express terms and conditions of the Bond, Safeco's liability is limited to the amount of $10,000.00, regardless of the numbers of years continued. Farmland Transportation, Inc. has allegedly failed to honor its obligations and allegedly breached certain contracts with various persons or entities, for whose ultimate benefit the Bond was issued.

Safeco has received claims against the Bond from Anthony M. Brida, Inc.; B & D Motors, Inc.; Cornhusker Motor Lines; Direct Transport, Inc.; Michale Bennett Trucking, Inc.; R.E. Garrison Trucking, Inc.; Sparhawk Trucking, Inc.; Steiner & Son, L.L.C.; Agricultural Express; ALL Transportation Services, Inc.; E.C. Transportation; Pinhook Transportation; Transcarriers, L.L.C.; Dannie Glider, Inc.; and Heavy Duty Trux. Ltd. (collectively "the Claimants"). Prior to receiving claims from the Claimants, Safeco received claims against the Bond by Laurel Trucking Co. Inc. in the amount of $1,025.00 and Meadowlark Transportation in the amount of $1,622.95 (collectively "the Prior Claims"). At the time Safeco received the Prior Claims, it believed that the Bond was in a sufficient amount to satisfy the Prior Claims, and thus, pursuant to its obligations under the Bond, Safeco paid out part of the penal sum of the Bond in the amount of the Prior Claims and in full satisfaction thereof. Subsequent to the satisfaction of the Prior Claims, each of the Claimants asserted a claim under the Bond. Safeco does not admit the validity of the claims made by each of the Claimants, but after an initial investigation, it has reason to believe that at least some of the loss claimed by each of the Claimants may be within the scope of the Bond.

In Count I of its Amended Complaint, Safeco asserts that it expressly reserves all of its rights and defenses to any pending claims of the Claimants, and has not acted on these claims because the $10,000.00 penal limit of the Bond, less the amount of the Prior Claims, may be exceeded by the claims of the Claimants and may not be sufficient to pay all of the outstanding claims. There is a dispute between Safeco and the Claimants, and Safeco is faced with competing claims from the Claimants and possibly from unknown claimants. Safeco cannot, with any reasonable degree of certainty, determine which of the Claimants it is obligated to pay any sums now or hereinafter due under the Bond, and, because multiple claims have been made under the Bond, Safeco risks multiple liability, absent a determination by the Court of the sums to be paid. Additionally, if the Claimants' claims are determined to be valid, they may exceed the outstanding penal sum of the Bond, requiring proration among the Claimants,

or a determination of priority of the Claimants. Safeco asserts that, upon order of this Court, it stands ready to tender to the Clerk of the Court the sum of $7,352.05, which represents the outstanding penal sum of the Bond, for the Clerk to hold pending a determination by this Court of the rights of the respective parties. Safeco contends that upon paying the outstanding penal sum of the Bond into the court registry, it will have satisfied all of its obligations under the Bond to each of the Claimants and to any unknown claimants. Upon payment of the outstanding penal sum of the Bond into the court registry, Safeco requests a declaration by this Court that it has satisfied all of its obligations under the Bond, that it is released from any further obligation under the Bond and that the Bond is cancelled. Safeco further requests that the Court determine and declare the rights of the Claimants, Safeco and Farmland under the Bond and the General Agreements of Indemnity, and declare to whom, if any, the remainder of the outstanding penal sum of the Bond should be paid.

In Count II of its Amended Complaint, Safeco requests, pursuant to Federal Rule of Bankruptcy Procedure 7022 and Federal Rule of Civil Procedure 22, an order from the Court permitting it to deposit the outstanding penal sum of the Bond into the court registry, and allowing the Clerk to hold the funds in an interest-bearing account pending a resolution by this Court of the rights and liabilities of the Claimants, Safeco and Farmland under the Bond.

In Count III of its Amended Complaint, Safeco asserts that by failing to satisfy all of the obligations under the Bond, Farmland Transportation, Inc. has caused Safeco to incur immediate and imminent liability, loss, attorney's fees and expenses. Pursuant to common law rights of reimbursement, Farmland Transportation, Inc. is obligated to reimburse Safeco for any and all liability and loss which it has or will incur by reason of having executed the Bond. Further, pursuant to the terms of the General Agreements of Indemnity, Farmland Industries, Inc. is obligated to indemnify Safeco from all liability, loss, attorney's fees and expenses it may have suffered or will incur by reason of having issued the Bond. Safeco seeks a ruling from this Court that Farmland Transportation, Inc. must reimburse and/or Farmland Industries, Inc. must indemnify Safeco for any and all funds which Safeco has paid, and may be required to pay, under the Bond, plus all costs and expenses, including attorney's fees, incurred in pursuing this action.

In Count IV of its Amended Complaint, Safeco alleges that as surety under the Bond it is entitled to the equitable remedies of exoneration or, in the alternative, *quia timet,* against Farmland Transportation, Inc., as principal, in the event the Court declares that any of the claims of the Claimants are valid and presently or imminently due and for which Farmland Transportation, Inc., as principal, and Safeco, as surety, would be liable. Safeco asserts that to date, Farmland Transportation, Inc. has refused or otherwise failed to satisfy the claims alleged by the Claimants, and has further refused or otherwise failed to tender an amount equal to the lesser of the aggregate sums of the claims asserted against the Bond or the outstanding penal sum of the Bond to Safeco, or otherwise place Safeco in funds or property in sufficient amount to satisfy any immediate or imminent debt that the Court may declare due against Farmland Transportation, Inc. and Safeco pursuant to the Bond. Safeco contends that this refusal or failure constitutes a breach of Farmland Transportation, Inc.'s duty under the Bond and prejudices Safeco to the extent that it

could be subjected, pursuant to its duties under the Bond, to advancing funds on account of any debt of Farmland Transportation, Inc. to any of the Claimants. Safeco requests that the Court enter judgment in its favor and against Farmland Transportation, Inc. for *quia timet*, and require Farmland Transportation, Inc. to immediately place Safeco in funds or property sufficient to satisfy any debt which may imminently become owing by Safeco to any of the Claimants pursuant to the Bond. Alternatively, Safeco requests that the Court enter judgment in its favor and against Farmland Transportation, Inc. for exoneration, and require Farmland Transportation, Inc. to exonerate Safeco for its obligations which may be deemed presently due under the Bond by conveying from its own funds or property an amount sufficient to satisfy any debt which the Court may deem presently owing by Farmland Transportation, Inc. and Safeco to the Claimants pursuant to the Bond.

In Count V of its Amended Complaint, Safeco alleges that the Bond constitutes an executory contract between Farmland Transportation, Inc. and Safeco, as well as a financial accommodation from Safeco to Farmland Transportation, Inc. as contemplated by the Bankruptcy Code. Safeco contends that Farmland Transportation, Inc.'s refusal or otherwise failure to satisfy the alleged claims of the Claimants, or to tender an amount equal to the lesser of the aggregate amount of the claims alleged by the Claimants against the Bond and the outstanding penal sum of the Bond to Safeco, or to otherwise place Safeco in funds or property in sufficient amount to satisfy any immediate or imminent debt or debts which this Court may declare due against Farmland Transportation, Inc. or Safeco pursuant to the Bond, constitutes a *pro forma* assumption of the Bond without providing adequate assurance to Safeco of its future performance of its obligations

under the Bond, including, *inter alia*, its duty to exonerate or provide payment *quia timet*. Alternatively, Safeco asserts that Farmland Transportation, Inc.'s refusal or otherwise failure to satisfy the alleged claims of the Claimants, or to tender an amount equal to the lesser of the aggregate amount of the claims alleged by the Claimants against the Bond, or the penal sum of the Bond, or to otherwise place Safeco in funds or property in sufficient amount to satisfy any immediate or imminent debt or debts which the Court may declare due against Farmland Transportation, Inc. and Safeco pursuant to the Bond, constitutes the use of the outstanding penal sum of the Bond, which is presently the property of Safeco, without providing adequate protection to Safeco of its interest in the proceeds thereof. Safeco requests that the Court enter an order requiring Farmland Transportation, Inc. to provide Safeco with adequate assurances of the future performance of its obligations under the Bond and/or adequate protection of Safeco's rights in the Bond and its proceeds.

### Legal Analysis

█ Because this Court questions whether subject matter jurisdiction exists to resolve the dispute between Safeco and the Other Defendants as set forth in the Amended Complaint, the undersigned begins the analysis with an examination of the statutory authority for bankruptcy court jurisdiction. Section 1334(b) of title 28 provides that:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title

11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b).

Section 157 of title 28 provides in relevant part:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157. A non-exclusive list of core proceedings is set forth in 28 U.S.C. § 157(b)(2). According to section 157(c)(1) of title 28:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1). Section 157(c)(2) of title 28 provides that:

Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c)(2).

The District Court for the Western District of Missouri has provided for an automatic reference of all civil proceedings arising under title 11 or arising in or related to cases under title 11 to the bankruptcy judges as provided for in 28 U.S.C. § 157; therefore, this Court has jurisdiction to hear any case that arises under title 11 or arises in or is related to a case under title 11. *See Bannister Bank & Trust v. City Mgmt. Co. (In re AmerEco Environmental Servs., Inc.),* 138 B.R. 590, 592–93 (Bankr.W.D.Mo.1992). In *Abramowitz v. Palmer,* 999 F.2d 1274, 1277–78 (8th Cir. 1993), the Eighth Circuit Court of Appeals discussed the jurisdiction of the bankruptcy courts:

The jurisdiction of the federal bankruptcy courts is governed by 28 U.S.C. § § 157 and 1334. Pursuant to this statutory authority, the bankruptcy courts, upon delegation from the district courts, have jurisdiction of all cases filed pursuant to the bankruptcy code as well as "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334; 28 U.S.C. § 157(a)(authorization for district courts to refer to the bankruptcy judges any or all bankruptcy cases and any or all related proceedings). In addition, the bankruptcy court's jurisdiction includes all property of the debtor and of the bankruptcy estate.

. . . .

Civil proceedings in a bankruptcy case are divided into two categories: (1) core proceedings and (2) non-core, related proceedings. . . . *[S]ee . . . In re Marine Iron & Shipbuilding Co.,* 104 B.R. 976, 980 (D.Minn.1989)("In general, a core proceeding is a legal dispute between parties in interest to a bankruptcy case,

one of whom is almost always the debtor.") . . . .

The bankruptcy code does not define "related to" jurisdiction. This court, however, has stated that in order for the bankruptcy court to assume "related to" jurisdiction the proceeding at issue must " 'have some effect on the administration of the debtor's estate.' " *In re Dogpatch,* 810 F.2d 782, 786 (8th Cir.1987). To determine whether a proceeding is "related to" a bankruptcy case, we have adopted what has been framed as the "conceivable effect" test:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 786 (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *see also In re Titan Energy, Inc.,* 837 F.2d 325 (8th Cir.1988).

In *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773–74 (8th Cir.1995), the Eighth Circuit further explained:

> Core proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987)(*Wood* ); *see* 28 U.S.C. § 157(b)(2). Non-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy. *Wood,* 825 F.2d at 97 . . . .

For subject matter jurisdiction to exist in a "related to" action, there must be some nexus between the civil proceeding and the Title 11 case. *Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 787 (11th Cir.1990)(*Lemco*). We have stated that for courts to assert jurisdiction over a proceeding "related to" a bankruptcy case, the proceeding must " 'have some effect on the administration of the debtor's estate.' " *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987)(*Dogpatch*)(quoting *Zweygardt v. Colorado Nat'l Bank,* 52 B.R. 229, 233 (Bankr.D.Colo.1985)).

In *Foley Co. v. Aetna Cas. & Surety Co. (In re S & M Constructors, Inc.),* 144 B.R. 855 (Bankr.W.D.Mo.1992), Foley, as general contractor, entered into a subcontract with S & M Constructors for a project for the United States Army Corps of Engineers. In accordance with the subcontract, S & M Constructors executed and delivered to Foley performance and payment bonds, with S & M Constructors as principal and Aetna Casualty as surety for the benefit of Foley as obligee. Foley alleged that S & M Constructors failed to properly perform its obligations under the subcontract; that it was forced to complete the work improperly performed by S & M Constructors; and that as a result of the failure of S & M Constructors to perform its obligations under the subcontract, it sustained damages in the amount of approximately $2.3 million. Foley and S & M Constructors attempted to resolve their dispute through arbitration, however, before arbitration could be completed S & M Constructors filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. Shortly thereafter, Foley filed a complaint against Aetna Casualty in the United States District Court for the Western District of Missouri seeking to recover its damages from Aetna Casualty

pursuant to the performance and payment bonds. Aetna Casualty removed the action from the District Court to the United States Bankruptcy Court for the Western District of Missouri, then filed a motion to have the adversary proceeding transferred to the United States Bankruptcy Court for the Northern District of Ohio. Foley responded by filing a motion to remand the action back to the District Court, and opposing Aetna Casualty's motion to transfer. The Honorable Arthur B. Federman denied Aetna Casualty's motion to transfer and sustained Foley's motion for remand, opining:

> The issue that first must be addressed is whether this Court has jurisdiction over Foley's action against Aetna for recovery under the payment and performance bonds. Section 1334 of Title 28, United States Code, establishes four categories of bankruptcy cases and proceedings over which district courts may exercise jurisdiction. A district court may refer to the bankruptcy court any or all (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. 28 U.S.C. § 157(a).
>
> . . . .
>
> Unless a case or proceeding falls within one of the four specified categories of cases and proceedings over which the district court is granted jurisdiction pursuant to section 1334(a) or (b), and which are listed in section 157(a), it cannot be heard by the bankruptcy court.
>
> . . . .
>
> Foley's action against Aetna for recovery under the payment and performance bonds certainly is not a "case under title 11." Nor is it a "core proceeding arising under title 11," since it is not a claim or cause of action expressly created by title 11. Furthermore, it cannot be said that

> Foley's action would have no existence absent S & M's bankruptcy; and, therefore, the present action is not a "core proceeding arising in a case under title 11." In fact, the debtor S & M is not even a party to this action. The controversy as presently postured is between two non-debtor entities.
>
> Thus, in order for this Court to entertain jurisdiction over this matter, it must be a "non-core proceeding related to a case under title 11." Since Foley's cause of action is not one that was owned by the debtor that became part of the estate under section 541, it may qualify as a "non-core related proceeding" only by virtue of its being a suit between third parties which affects the administration of the title 11 case, here S & M's bankruptcy case.
>
> The authority upon which a majority of the courts rely in determining whether a non-core proceeding is sufficiently related to bankruptcy to confer jurisdiction on the bankruptcy court is *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). *See In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 n. 19 (11th Cir. 1990). In *Pacor*, the plaintiff Higgins brought a product liability action in Pennsylvania state court against Pacor seeking damages allegedly caused by Higgins' exposure to asbestos that had been supplied by Pacor. Pacor then filed a third party complaint impleading Johns–Manville, which Pacor alleged to be the original manufacturer of the asbestos. The state court severed the Pacor–Manville third party action from the underlying Higgins–Pacor action. Pacor then sought to have the entire dispute removed to the United States Bankruptcy Court for the Eastern District of Pennsylvania, and then transferred to the Manville bankruptcy in the Southern District of New York. On appeal from

the bankruptcy court's decision to remand the entire action to state court, the District Court for the Eastern District of Pennsylvania ruled that the Higgins–Pacor direct action was not "related to" the Manville bankruptcy and should be remanded to the state court. *Pacor,* 743 F.2d at 986. The district court did, however, find that the Pacor–Manville third party claim was à proceeding "related to" the Manville bankruptcy, and remanded that portion of the action to the bankruptcy court for consideration of Pacor's transfer motion. *Pacor,* 743 F.2d at 987.

In affirming the district court's determination that the Higgins–Pacor action was not a "related to" proceeding, the Third Circuit explained:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor,* 743 F.2d at 994 (citations omitted)(emphasis original). According to the Court of Appeals, the primary action between Higgins and Pacor "would have no effect on the Manville bankruptcy estate," and "[a]t best, [would be] a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Pacor,* 743 F.2d at 995.

The reasoning of the *Pacor* court was approved by the Eighth Circuit in *Na-tional City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986). *See also In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987).

. . . .

This action more closely resembles that in the case of *National City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986). In *Coopers & Lybrand,* a bank, which was the indenture trustee for various notes issued by one of the debtor entities, brought suit against Coopers & Lybrand under state law alleging negligence, fraud, and breach of contract. The bank sought to recover from Coopers & Lybrand the amount of the indenture noteholders' claims that were left unpaid under the terms of the debtor's reorganization plan. Coopers & Lybrand removed the action from state court to federal court, alleging federal question jurisdiction based on 28 U.S.C. § § 1331 and 1334(b). Thereafter, the bank filed a motion to remand the action to state court, and Coopers & Lybrand sought transfer of the action from the District Court for the District of Nebraska to the Bankruptcy Court for the Central District of California, which had retained jurisdiction over the bankruptcy proceedings. Upon concluding that the bank's action against Coopers & Lybrand was "at most a precursor to [Coopers & Lybrand's] potential indemnification action against" the debtor, the district court held, *inter alia,* that bankruptcy jurisdiction did not exist under 28 U.S.C. § 1334(b). *Coopers & Lybrand,* 802 F.2d at 993 (citing the district court's slip opinion); *see also Pacor,* 743 F.2d at 995.

In reviewing the district court's holdings, the Court of Appeals agreed that the bank's action did not "arise under" title 11 "because none of [the bank's] claims is based on a provision of Title

11." *Coopers & Lybrand,* 802 F.2d at 994. Furthermore, the Eighth Circuit approved of the district court's reliance on the reasoning of *Pacor, Inc. v. Higgins, supra,* and agreed that the bank's action against Coopers & Lybrand did not constitute a "core proceeding arising in a case under title 11" or a "non-core proceeding related to a case under title 11." *Coopers & Lybrand,* 802 F.2d at 994.

Aetna attempts to distinguish *Pacor* on the basis that in *Pacor* there was no contractual indemnification between Pacor and Johns–Manville, whereas the debtor S & M and its four individual owners contractually agreed to indemnify Aetna for any liability incurred as a result of the performance and payment bonds. It is true that the Third Circuit did distinguish the Higgins–Pacor action from an action against a guarantor of the debtor's obligations. *Pacor,* 743 F.2d at 995. In *dictum,* the court explained that "[b]y virtue of the indemnification agreement between [the debtor] and [the guarantor], a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against [the debtor] ... Moreover, even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that that [sic] creditor's status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation." *Pacor,* 743 F.2d at 995.

Like the bank's action against Coopers & Lybrand, and the Higgins–Pacor action in *Pacor,* Foley's action against Aetna is, at most, a precursor to Aetna's indemnification claim against S & M. The performance and payment bond obligations of Aetna, if any, are not an asset of S & M's bankruptcy estate.

Pursuant to the terms of such bonds, S & M is not a necessary party to this action. A judgment against Aetna will not necessarily be dispositive of any defenses which S & M may have against Aetna's possible indemnification claims. Accordingly, as in *Coopers & Lybrand, supra,* Foley's action against Aetna is not a "non-core proceeding related to a case under title 11."

*S & M Constructors,* 144 B.R. at 858–62 (footnotes omitted).

This Court is persuaded by the sound reasoning of *S & M Constructors,* and determines that although the factual situation is slightly different here in that Safeco has filed an action against the Other Defendants, as obligees under the Bond, and Farmland, the debtor/principal, Safeco's action for declaratory relief and interpleader by which Safeco requests, in relevant part, that the Court determine the rights of the Other Defendants under the Bond, is merely a precursor to a potential indemnification claim against Farmland. By means of this adversary proceeding, Safeco is attempting to compress into one step the two-step process of first determining whether Safeco is liable to the Other Defendants under the Bond and then, if so, whether Farmland must indemnify Safeco. Judge Federman in *S & M Constructors,* after analyzing relevant Eighth Circuit and Third Circuit case law, determined that a bankruptcy court does not have subject matter jurisdiction over the first step in the process by which the surety's liability to the obligee under a bond is established, and the undersigned heartily agrees. Accordingly, Safeco must bring its cause of action against the Other Defendants in a proper forum.

Additionally, the Court has examined whether *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403

(1995), provides the authority for this Court to exercise subject matter jurisdiction over the dispute between Safeco and the Other Defendants. In *Celotex*, in 1987 Bennie and Joann Edwards filed suit in the United States District Court for the Northern District of Texas against Celotex alleging asbestos-related injuries. In April of 1989 the district court entered a judgment in favor of the Edwardses and against Celotex in the amount of approximately $280,000.00. To stay execution of the judgment pending appeal, Celotex posted a supersedeas bond [2] in the amount of almost $300,000.00 with Northbrook Property and Casualty Insurance Company serving as surety. As collateral for the bond, Celotex allowed Northbrook to retain money owed to Celotex under a settlement agreement resolving insurance coverage disputes between Northbrook and Celotex. On October 12, 1990, the Fifth Circuit Court of Appeals affirmed the district court's judgment, which rendered final the Edwardses' judgment against Celotex. That same day Celotex filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. On October 17, 1990, the Florida bankruptcy court exercised its equitable powers under 11 U.S.C. § 105(a) and issued an injunction which stayed all proceedings involving Celotex regardless of whether the matter was on appeal and a supersedeas bond had been posted by Celotex, and which prohibited creditors like the Edwardses from proceeding against sureties without the Florida bankruptcy court's permission. The Edwardses filed a motion pursuant to Federal Rule of Civil Procedure 65.1 in the Texas district court seeking permission to execute against Northbrook on the supersedeas bond. Celotex and Northbrook opposed the motion, asserting that all proceedings to enforce the bonds had been enjoined by the Florida bankruptcy court. The Texas district court allowed the Edwardses to execute on the supersedeas bond against Northbrook. Celotex appealed, and the Fifth Circuit Court of Appeals affirmed. On further appeal, the United States Supreme Court reversed, holding that the Edwardses could not collaterally attack the Florida bankruptcy court's section 105(a) injunction by filing a motion to execute against the surety on the supersedeas bond in the Texas district court. The Edwardses were required to obey the Florida bankruptcy court's order until it was modified or reversed, and their recourse was to seek appellate review of the Florida bankruptcy court's decision within the Eleventh Circuit.

The Edwardses asserted before the Supreme Court that the Florida bankruptcy court lacked jurisdiction to issue the section 105(a) injunction. In response, the Supreme Court opined:

> The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute. Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Here, the Bankruptcy Court's jurisdiction to enjoin respondents' proceeding against Northbrook must be

**2.** Black's Law Dictionary defines a supersedeas bond as a "bond required of one who petitions to set aside a judgment or execution and from which the other party may be made whole if the action is unsuccessful." Black's Law Dictionary 1289 (5th ed.1979).

based on the "arising under," "arising in," or "related to" language of §§ 1334(b) and 157(a).

Respondents argue that the Bankruptcy Court had jurisdiction to issue the Section 105 Injunction only if their proceeding to execute on the bond was "related to" the Celotex bankruptcy. Petitioner argues the Bankruptcy Court indeed had such "related to" jurisdiction. Congress did not delineate the scope of "related to" jurisdiction, but its choice of words suggests a grant of some breadth. . . . We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (1984), that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," *id.,* at 994, . . . and that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction cannot be limitless. *See Pacor, supra,* at 994. . . .

We believe that the issue whether respondents are entitled to immediate execution on the [supersedeas] bond against Northbrook is at least a question "related to" Celotex's bankruptcy. Admittedly, a proceeding by respondents against Northbrook on the supersedeas bond does not directly involve Celotex, except to satisfy the judgment against it secured by the bond. But to induce Northbrook to serve as surety on the bond, Celotex agreed to allow Northbrook to retain the proceeds of a settlement resolving insurance coverage disputes between Northbrook and Celotex.

The Bankruptcy Court found that allowing respondents-and 227 other bonded judgment creditors-to execute immediately on the bonds would have a direct and substantial adverse effect on Celotex's ability to undergo a successful reorganization. It stated:

> "[I]f the Section 105 stay were lifted to enable the judgment creditors to reach the sureties, the sureties in turn would seek to lift the Section 105 stay to reach Debtor's collateral, with corresponding actions by Debtor to preserve its rights under the settlement agreements. Such a scenario could completely destroy any chance of resolving the prolonged insurance coverage disputes currently being adjudicated in this Court. . . . *In re Celotex,* 140 B.R. 912, 915 (1992)(*Celotex II*)."

*Celotex,* 514 U.S. at 307–10, 115 S.Ct. at 1498–1500 (citations and footnotes omitted).

In his dissent, Justice Stevens remarked that he:

[D]id not take issue with the conclusion that the Edwards' attempt to collect on the supersedeas bond falls within the "related to" jurisdiction of the district court. *Cf.* 1 Collier on Bankruptcy ¶ 3.01[1][c][iv], p. 3–29 (15th ed.1994)(hereinafter Collier)(" 'Related' proceedings which involve litigation between third parties, which could have some effect on the administration of the bankruptcy case, are illustrated by suits by creditors against guarantors"). Despite the Edwards' argument to the contrary, it seems to me quite clear that allowing the Edwards to recover from Northbrook on the supersedeas bond would have an adverse impact on Celotex because Northbrook would then be able to retain the insurance proceeds

that Celotex pledged as collateral when the bond was issued.

*Celotex,* 514 U.S. at 320 n. 5, 115 S.Ct. at 1504 n. 5 (Stevens, J., dissenting).

This Court believes that the supersedeas bond at issue in *Celotex* is distinguishable from the Bond at issue here. In *Celotex,* the condition precedent to recovery under the supersedeas bond was a final judgment rendered in favor of the Edwardses in their lawsuit against Celotex. Thereafter, in the absence of the Florida bankruptcy court's section 105(a) injunction, they had an unquestionable right to execute against the surety on the bond. Further, the surety under the supersedeas bond then had an immediate right to proceed against the property that Celotex had pledged as collateral for the bond. In this case, Safeco's liability to the Other Defendants under the Bond is not certain, but must be established in a proper forum. If it is determined that the Other Defendants are entitled to the outstanding penal sum of the Bond, Safeco then may proceed against Farmland Industries, Inc. and Farmland Transportation, Inc., which may be able to assert defenses to an indemnification claim. As was the situation in *S & M Constructors,* a judgment against Safeco in favor of the Other Defendants will not necessarily be dispositive of any defenses that Farmland Industries, Inc. and Farmland Transportation, Inc. may have against Safeco's possible indemnification claims. *See S & M Constructors,* 144 B.R. at 862.

▇ Finally, until Safeco's dispute with the Other Defendants is resolved in a proper forum, the Court believes that it is appropriate to hold in abeyance any action to determine whether Farmland Transportation, Inc. is liable to Safeco under the theories of exoneration, *quia timet* or common law reimbursement, or whether Farmland Industries, Inc. is liable to Safeco for indemnification. In *Borey v. Na-*

*tional Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 934 F.2d 30, 32–33 (2d Cir. 1991) (citations omitted)(emphasis in original), the Second Circuit Court of Appeals explained that:

> *Quia timet* is the right of a surety to demand that the principal place the surety "in funds" when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor.... Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor....

> Historically, a bill *quia timet* was the procedural device by which a court of equity would exercise its jurisdiction "to protect a party against the occurrence of some future injury which he fears he may suffer, and which he cannot avoid by a present action at law...." *Quia timet* is the applicable remedy available to the surety before the principal's debt is mature when it becomes likely that the principal will default on his obligation; exoneration is the proper remedy once liability has matured and the principal has defaulted on his debt to the creditor.

> *Quia timet* and exoneration contain common substantive elements. Specifically, the surety must establish that the debt is presently due (exoneration) or will come due (*quia timet*), that the principal is or will be liable for the debt, and, that absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor.... "[B]efore paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own

resources *when the loss must in the end fall upon the principal."*

In *Uptagrafft v. United States,* 315 F.2d 200, 203 (4th Cir.1963), *cert. denied,* 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 52 (1963) (citations omitted), the Fourth Circuit Court of Appeals clarified that:

> Though 'exoneration' and 'indemnity' are often used interchangeably, the former refers to the right to be reimbursed by reason of having paid that which another should be compelled to pay.... the latter, as applied to the facts of this case, means compensation for loss already sustained. This right is generally based upon contract, express or implied.

Safeco alleges that Farmland Transportation, Inc. has defaulted under the Bond and asserts that it has already paid two claimants under the Bond, Laurel Trucking Co. Inc. and Meadowlark Transportation, which arguably gives rise to claims against Farmland Transportation, Inc. for *quia timet,* reimbursement or exoneration, or against Farmland Industries, Inc. for indemnification based upon the sums already paid. However, because Safeco's liability under the Bond is limited to the amount of only $10,000.00, the Court believes that Safeco will not be prejudiced by being required to first bring a cause of action against the Other Defendants in an appropriate forum, then after Safeco's total liability under the Bond has been determined, continuing with the prosecution of its causes of action against Farmland Industries, Inc. and Farmland Transportation, Inc. in this Court. Judicial economy and this Court's limited resources weigh heavily in favor of waiting until an appropriate forum has resolved the dispute between Safeco and the Other Defendants before the Court addresses Farmland Transportation, Inc.'s potential liability to Safeco under a theory of *quia timet,* common law reimbursement or exoneration, and Farmland Industries, Inc.'s potential liability to Safeco for indemnification. For the same reason, the Court does not believe that it is appropriate at this time to adjudicate Safeco's claims against Farmland Transportation, Inc. based upon adequate assurance and adequate protection.

### Conclusion

Based on the above discussion, the Court *sua sponte* DISMISSES for lack of subject matter jurisdiction the causes of action asserted by Safeco Insurance Company of America against Anthony M. Brida, Inc.; B & D Motors, Inc.; Cornhusker Motor Lines; Direct Transport, Inc.; Michale Bennett Trucking, Inc.; R.E. Garrison Trucking, Inc.; Sparhawk Trucking, Inc.; Steiner & Son, L.L.C.; Agricultural Express; ALL Transportation Services, Inc.; Pinhook Transportation; Transcarriers, L.L.C.; Dannie Glider, Inc.; Heavy Duty Trux. Ltd.; and E.C. Transportation (the "Other Defendants") in its Amended Adversary Complaint for Interpleader, Declaratory Relief, Indemnification, Adequate Protection, Adequate Assurance and Exoneration, or in the Alternative, Quia Timet. The Court ORDERS that Safeco Insurance Company of America's causes of action against Farmland Industries, Inc. and Farmland Transportation, Inc. will be HELD IN ABEYANCE pending a determination in an appropriate forum whether Safeco Insurance Company of America is liable to the Other Defendants under bond number 5575570. The Court ORDERS that if an appropriate forum determines that Safeco Insurance Company of America is liable to the Other Defendants, it may continue with the prosecution of its causes of action pending against Farmland Industries, Inc. and Farmland Transportation, Inc. The Court ORDERS that if an appropriate forum determines that Safeco Insurance Company of America is not liable to the Other Defendants, Safeco Insur-

ance Company of America promptly will dismiss the Amended Complaint, except to the extent that it is pursuing recovery for sums already paid to Laurel Trucking Co. Inc. and Meadowlark Transportation (who are not defendants in this adversary proceeding) for claims they made under bond number 5575570. A status conference will be scheduled every six months in this adversary proceeding in order to track the progress of Safeco Insurance Company of America's action against the Other Defendants. The Court DENIES the Amended Motion to Interplead Bond Penal Sum filed by Safeco Insurance Company of America.